1  BRIAN R. BLACKMAN (SBN 196996)
   bblackman@blaxterlaw.com
2  J.T. WELLS BLAXTER (SBN 190222)
   wblaxter@blaxterlaw.com
3  BLAXTER | BLACKMAN LLP
   475 Sansome Street, Suite 1850
4  San Francisco, California 94111
   Telephone: (415) 550-7700
5
   Attorneys for defendants WHOLE
6  FOODS MARKET, INC. WHOLE FOODS
   MARKET SERVICES, INC., WHOLE
7  FOODS MARKET CALIFORNIA, INC. and
   WHOLE FOODS MARKET GROUP, INC.
8
9               UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11 | SHOSHA KELLMAN and ABIGAIL        | Case No. 17-cv-06584-LB
   | STARR, on behalf of themselves and all |
12 | others similarly situated,            | **REPLY BRIEF IN SUPPORT OF**
   |                                       | **MOTION TO DISMISS PLAINTIFFS'**
13 |              Plaintiffs,              | **SECOND AMENDED CLASS ACTION**
   |                                       | **COMPLAINT AND MOTION TO**
14 |        v.                             | **STRIKE**
15 | WHOLE FOODS MARKET, INC., WHOLE  | Date:   May 31, 2018
   | FOODS MARKET CALIFORNIA, INC.,   | Time:  9:30 AM
16 | WHOLE FOODS MARKET SERVICES,     | Crtrm: C – 15th Floor
   | INC., and WHOLE FOODS MARKET     |
17 | GROUP, INC.                          | Magistrate Judge Laurel Beeler
18 |              Defendants.             |
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................1

LEGAL ARGUMENT .........................................................................................................1

A.    The Court Should Dismiss Defendants WFMI, WFM Services and WFM
Group for Lack of Personal Jurisdiction ................................................................1

    1.    Plaintiffs Have Not Demonstrated Any Basis for Personal Jurisdiction
Over Defendant WFM Group .........................................................................1

    2.    Plaintiffs Failed to Provide Any Basis for the Exercise of General
Jurisdiction Over Defendants WFMI and WFM Services .............................1

        a.    Plaintiffs' Unverified and Unsupported Allegations Do Not
Establish Personal Jurisdiction Over WFMI or WFM Services........2

        b.    WFMI Lacks Sufficient Contacts with California for the
Exercise of General Jurisdiction .....................................................3

        c.    WFM Services Lacks Sufficient Contacts with California
for the Exercise of General Jurisdiction ..........................................5

    3.    Plaintiffs Failed to Provide Any Basis for the Exercise of Specific
Jurisdiction Over Defendants WFMI and WFM Services .............................6

B.    The Court Does Not Have Pendent Personal Jurisdiction Over Plaintiff
Starr's Claims ........................................................................................................7

C.    Plaintiffs Lack Standing to Sue on Products They Never Purchased....................10

    1.    Plaintiffs Must Establish Their Standing to Sue for Products They
Never Purchased.........................................................................................11

    2.    The Unpurchased Products Are Not Sufficiently Similar to Plaintiff
Kellman's Purchased Products ....................................................................12

D.    The Court Should Grant Defendants' Motion to Strike the SEC, Website
and Other Marketing Statements Plaintiffs Did Not See or Rely Upon.................13

E.      The SAC Does Not Plausibly Allege That Defendants' Representations on the Products Purchased in California Were False or Misleading ...................... 14

F.      Plaintiffs' Warranty Claims Fail as a Matter of Law ............................................. 15

CONCLUSION ................................................................................................................................. 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004) ....................................................................7, 8, 9

*Alexander v. Circus Circus Enter., Inc.*,
    972 F.2d 261 (9th Cir. 1992) ....................................................................................2

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
    223 F.3d 1082 (9th Cir. 2000) ..................................................................................1

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ..................................................................................2

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    582 U.S. __, 137 S.Ct. 1773 (2017) .....................................................................7, 9

*Brown v. Celestial Grp., Inc.*,
    913 F. Supp. 2d 881 (N.D. Cal. 2012) ................................................................12

*Calvert v. Huckins*,
    875 F.Supp. 674 (E.D. Cal. 1995) ..........................................................................3

*Clancy v. The Bromley Tea Co.*,
    308 F.R.D. 564 (N.D. Cal. Aug. 9, 2013) ...........................................................12

*Corcoran v. CVS Health Corp.*,
    169 F. Supp. 3d 970 (N.D. Cal. Mar. 14, 2016) ....................................................4

*Daimler AG v. Bauman*,
    571 U.S. 117, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014) ...................................1, 7

*Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ..................................................................................2

*Donahue v. Apple, Inc.*,
    871 F. Supp. 2d 913 (N.D. Cal. 2012) ................................................................12

*Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*,
    2014 WL 12027447 (W.D. Wash. Sept. 15, 2014) .................................................3

*Fallick v. Nationwide Mutual Ins. Co.*,
    162 F.3d 410 (6th Cir. 1998) ................................................................................12

*Goodyear Dunlop Tires Operations v. Brown*,
    564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) ......................................1

*Holland America Line Inc. v. Wärtsil North America, Inc.*,
   485 F.3d 450 (9th Cir. 2007) .................................................................5

*In re Wells Fargo Mortgage Bank-Certificates Litig.*,
   712 F. Supp. 2d 958 (N.D. Cal. Apr. 22, 2010) ................................11

*Ivie v. Kraft Foods Global*,
   2013 WL 685372 (N.D. Cal. Feb. 25, 2013) ....................................12

*Koh v. S.C. Johnson & Sons, Inc.*,
   2010 WL 94265 (N.D. Cal. Jan. 6, 2010) ........................................12

*Laduke v. Nelson*,
   762 F.2d 1318 (9th Cir. 1985) ..........................................................11

*Lanoviz v. Twinings North America*,
   2013 WL 675929 (N.D. Cal. Feb. 25, 2013) ....................................12

*Lew v. Kona Hosp.*,
   754 F.2d 1420 (9th Cir. 1985) ............................................................2

*Millennium Enterprises, Inc. v. Millennium Music, LP*,
   33 F.Supp.2d 907 (D. Ore. Jan. 4, 1999).............................................5

*Mink v. AAAA Development LLC*,
   190 F.3d 333 (5th Cir. 1999).................................................................5

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
   693 F.3 145 (2d Cir. 2012) ...............................................................12

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015)...............................................................4

*Romero v. HP, Inc.*,
   2017 WL 386237 (N.D. Jan. 27, 2017) .............................................11

*Sloan v. General Motors, LLC*,
   287 F. Supp. 3d 840 (N.D. Cal. Feb. 7, 2018) ....................................9

*Spratley v. FCA US LLP*,
   2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ...................................8

*Taylor v. Portland Paramount Corp.*,
   383 F.2d 634 (9th Cir. 1967)................................................................2

*Transure, Inc. v. Marsh and McLennan, Inc.*,
   766 F.2d 1297 (9th Cir. 1985)..............................................................3

*Vasquez v. Whole Foods Mkt., Inc.*,
   2018 WL 810232 (D.D.C. Feb. 9, 2018)...............................................3

*Williams v. Yamaha Motor Co., Ltd.*,
    851 F.3d 1015 (9th Cir. 2017) ....................................................................................7

## **STATUTES**

29 C.F.R. § 1910.1200(b)(6)(viii) ................................................................................15

Federal Rules of Civil Procedure, Rule 23 ....................................................................11

New York's General Business Law section 349 ..............................................................8

New York's General Business Law section 350 ..............................................................8

## I.      INTRODUCTION

Plaintiffs' Opposition fails to present any facts or evidence to establish this Court's personal jurisdiction over defendants WFMI, WFM Services and WFM Group, and the claims for plaintiff Starr.[1]  The Court, therefore, should dismiss these defendants and claims.  The Opposition also fails to demonstrate Plaintiffs' standing to sue on products they did not purchase, a viable express warranty claim or a plausible theory of deception based on the reasonable expectations of consumers.  As such, the Court should grant Defendants' motion under Fed. R. Civ. P. 12(b)(6).

## II.      LEGAL ARGUMENT

**A.      The Court Should Dismiss Defendants WFMI, WFM Services and WFM Group for Lack of Personal Jurisdiction.**

**1.      Plaintiffs Have Not Demonstrated Any Basis for Personal Jurisdiction Over Defendant WFM Group.**

Plaintiffs Opposition does not address or present any argument or evidence to establish personal jurisdiction over defendant WFM Group.  *See* ECF No. 38-1 at 9:4-13:22.  Defendants' motion to dismiss for lack of personal jurisdiction, therefore, should be granted as to WFM Group.

**2.      Plaintiffs Failed to Provide Any Basis for the Exercise of General Jurisdiction Over Defendants WFMI and WFM Services.**

General jurisdiction requires Defendants' business contacts with California be so substantial, continuous and systematic that they "approximate physical presence."  *Bancroft & Masters, Inc. v. Augusta Nat'l Inc. ("Bancroft"),* 223 F.3d 1082, 1086 (9th Cir. 2000).  "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there."  *See Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014).  Indeed, those affiliations must be significant enough to render the foreign corporation essentially "at home" in the forum State.  *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011).

Plaintiffs do not contest the facts that WFMI and WFM Services are neither incorporated in California nor have their principal places of business here.  *See* ECF No. 38-1 at 10:12-12:2.  Thus,

---

[1] Defendants use the same shorthand references defined in their moving papers.  *See* ECF No. 35.

there is no standard basis for the exercise of general jurisdiction over these defendants.  Plaintiffs, however, argue the Court may still exercise its general jurisdiction for three reasons: (1) the SAC contains numerous jurisdictional allegations that the Court must accept as true over Defendants' conflicting declaration; (2) WFMI maintains a physical presence in California through its ownership and control of WFM California; and (3) WFM Services has employees and assets in California and operates the Whole Foods Market website used to market and sell products in California.  *See* ECF No. 38-1 at 10:12-12:2.  All three arguments fail to establish a basis for general jurisdiction over WFMI and WFM Services.

### a.    Plaintiffs' Unverified and Unsupported Allegations Do Not Establish Personal Jurisdiction Over WFMI or WFM Services.

Plaintiffs bear the burden of establishing that jurisdiction over WFMI and WFM Services is proper.  *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  "[F]acts, not mere allegations, must be the touchstone" of this jurisdictional analysis.  *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967).  Plaintiffs did not verify their SAC and have not submitted any affidavits or other admissible evidence to support or substantiate the bald and false allegations of their complaint.  The Court, therefore, is not bound by Plaintiffs' allegations.[2]  *Taylor v. Portland Paramount Corp*, 383 F.2d at 639 ("We do not think the mere allegations of the complaint, when contradicted by affidavits, are enough to confer personal jurisdiction of a nonresident defendant.").

Indeed, the Ninth Circuit has continuously held that a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit."  *Alexander v. Circus Circus Enter., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992), quoting *Data Disc., Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).  Defendants have submitted the declaration of Jay Warren, Senior Litigation Counsel for WFM Services, in which he refutes each of the unsupported allegations contained in both the SAC and Plaintiffs' Opposition.  *See* ECF No. 36.  The Warren Declaration

---

[2]  "A verified complaint may be treated as an affidavit to the extent that the complaint is based on personal knowledge and sets forth facts admissible in evidence and to which the affiant is competent to testify."  *Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir. 1985).  Plaintiffs did not verify the SAC nor do they allege a factual basis to establish Plaintiffs' competency to testify about the structure, ownership, relationship, control or operation of various Whole Foods entities.

establishes that WFMI and WFM Services do not have any employees, offices, operations, bank

accounts or any other assets in California.  ECF No. 36 at ¶4-6, 24-25, 32-33.  Thus, they are not

subject to general jurisdiction in California.

**b.      WFMI Lacks Sufficient Contacts with California for the Exercise of General Jurisdiction.**

Plaintiffs argue WFMI is subject to general jurisdiction in California by virtue of its

relationship with WFM California, which owns and operates the Whole Foods Market stores in

Northern California.  *See* ECF No. 38-1 at 11:1-21.  However, as detailed in Section IV(A)(3)(a) of

Defendant's Motion (ECF No. 35 at 9:5-11:28), it is well established in this Circuit that "the

presence of a subsidiary in a forum state will not suffice to establish personal jurisdiction over a

nonresident parent company." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. Jan. 13, 1995),

citing *Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, (9th Cir. 1985).

Rather than address the clear and controlling case law cited in Defendants' Motion,[3]

Plaintiffs resort to unsupported and misleading accusations and allegations, arguing WFMI

"considers employees of WFM California [] as its own" (which is not true), "dictates the terms and

conditions of its subsidiaries' California-based employees" (which is not true), "operates its

California retail locations" (which is not true), "dictates every facet of WFM California's business"

(which is not true), and "dictates the marketing language permitted in WFM California's stores and

on the private label products sold in California" (which is not true).  *Compare* ECF No. 38-1 at

11:1-21 to ECF No. 36 at ¶¶3-5, 7-13,15-16.

WFMI is a holding company that owns shares of other operating companies, some of which

---

[3]  In footnote 3 of their Opposition, Plaintiffs attempt to distinguish two cases directly on point –
*Eat Right Foods, Ltd. v. Whole Foods Market, Inc. ("Eat Right")*, 2014 WL 12027447 (W.D.
Wash. Sept. 15, 2014) and *Vasquez v. Whole Foods Market, Inc. ("Vasquez")*, 2018 WL 810232
(D.D.C. Feb. 9, 2018).  Both cases found plaintiffs had failed to carry their burden to establish a
basis for personal jurisdiction over WFMI.  Plaintiffs argue these decisions are inapplicable
because the *Eat Right* plaintiff failed to support its opposition with admissible evidence and the
*Vasquez* plaintiff's jurisdictional allegations were less "robust" than those in the SAC.  *See* ECF
No. 31 at 10:22-24.  Neither argument effectively distinguishes these cases from the present case.
Plaintiffs, here, just like those in *Eat Right*, have not submitted any admissible evidence to support
the allegations of their SAC.  Further, the Warren Declaration refutes the misleading and inaccurate
allegations of the SAC.

in turn own and operate the individual Whole Foods Market stores, and does not have any employees, assets or operations in California.  *See* ECF No. 36 at ¶¶2-16; *see also* ECF No. 35 at 9:20-11:24.  Plaintiffs attempt to challenge these facts by pointing to various business documents, including the Whole Foods Market Code of Conduct, Executive Retention Plan, Indemnification Agreement, Stock Purchase Plan and WFMI's Bylaws.  *See* ECF No. 38-1 at 6:9-23, 11:1-21; *see also* ECF No. 31 at ¶¶94, 96, 104-109.  Plaintiff argues these documents somehow prove that WFMI dominates and controls WFM California, subjecting WFMI to general jurisdiction in California under an alter ego theory.  *See* ECF No. 38-1 at 11:1-21.

Plaintiffs' argument is incorrect and completely mischaracterizes the alleged documents. For example, Plaintiffs claim that the phrase in WFMI's Bylaws that "agents, functionaries and certain other employees are deemed to be serving in such capacity at the request of WFMI" establishes that WMFI hires, directs and controls WFM California's employees.  *See* ECF No. 38 at 11:2-3.  However, if one reviews the entire sentence of the Bylaws from which Plaintiff plucked this phrase, it is obvious this statement only applies to persons serving in specific capacities and is made for the limited purpose of determining indemnification rights under Section 9.1 of the Bylaws.  The quoted phrase in no way constitutes a global appointment by WFMI of all California based employees and agents.

Moreover, the existence of a Code of Conduct, Stock Purchase Plan, Executive Retention Plan and Indemnification Agreements does not demonstrate the type of pervasive day-to-day control needed to pierce the "corporate veil."  Indeed, "[a] parent corporation may be directly involved in financing and macro-management of its subsidiaries without exposing itself to a charge that each subsidiary is merely its alter ego."  *Ranza v. Nike, Inc*., 793 F.3d at 1059, 1073 (9th Cir. 2015).  These documents simply do not demonstrate the type of commingling of funds and assets, inadequate capitalization, lack of segregation of corporate records, holding out by one entity that it is liable for the debts of the other and/or disregard of corporate formalities needed to show that WFM California is a mere instrumentality of WFMI. S*ee Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 982-83 (N.D. Cal. Mar. 14, 2016).  Indeed, it is not.  WFM California maintains its own independent corporate status and structure and sets its own policies and procedures.  ECF No.

36 at ¶¶8-9, 15.  Thus, WFM California contacts and operations in California cannot be imputed to WFMI and do not provide a basis for general jurisdiction over WFMI.

    **c.**  **WFM Services Lacks Sufficient Contacts with California for the Exercise of General Jurisdiction.**

  Plaintiffs contend WFM Services is subject to general jurisdiction in California because it allegedly has employees and assets in California and operates the Whole Foods website that markets and sells products in California.  *See* ECF No. 38-1 at 11:9-13, 11:22-12:2.  Plaintiffs point to a declaration submitted in 2006 in a case in the Southern District of New York to establish that WFM Services currently has employees and assets in California.  ECF No. 38-1 at 11:11-13.  Plaintiffs' reliance on a twelve-year-old declaration fails.  None of the people identified in the declaration, including those identified as residing in California, still work for any Whole Foods entity except Brianna Carter, who continues to work and reside in Austin, Texas.  *See* Reply Declaration of Jay Warren ("Reply Warren Decl.") at ¶¶2-3.  As stated in the Warren Declaration, WFM Services does not currently have any employees residing or assets located in California.  ECF No. 36 at ¶¶24-26.  Thus, Plaintiff has not presented any competent evidence to show that WFM Services currently has, or has had in the last five years, any employees or assets in California.

  WFM Services is responsible for the content and design of the Whole Foods Market website.  ECF No. 36 at ¶29.  The website is accessible to anyone on the internet, including California consumers.  General jurisdiction, however, cannot be based merely on the operation of a website, regardless of whether the website is interactive (i.e., consumers can exchange information with the website) or passive.  *See Holland Am. Line Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 460 (9th Cir. 2007) ("We have consistently held that a mere web presence is insufficient to establish personal jurisdiction."); *see also Mink v. AAAA Development LLC*, 190 F.3d 333, 336-337 (5th Cir. 1999) (maintaining website that posts information about its products and services is insufficient basis for personal jurisdiction); *Millennium Enterprises, Inc. v. Millennium Music, LP*, 33 F.Supp.2d 907, 922-23 (D. Ore. Jan. 4, 1999) ("The existence of a Web site, whether passive or interactive, does not rise to the requisite level of conduct.")  Plaintiffs have failed to demonstrate

1  any basis for general jurisdiction over WFM Services.

2  **3.      Plaintiffs Failed to Provide Any Basis for the Exercise of Specific Jurisdiction**

3  **Over Defendants WFMI and WFM Services.**

4  Plaintiffs contend the Court may exercise specific jurisdiction over defendants WFMI and

5  WFM Services because they designed, manufactured, labeled and shipped or otherwise placed the

6  subject body care products into the stream of commerce with the knowledge and intent that those

7  body care products would be sold to California consumers such as plaintiff Kellman.  *See* ECF No.

8  38-1 at 12:4-13:5.  Plaintiffs again have their facts wrong.

9  The facts on this point are straightforward and uncontested.  WFMI does **not** design,

10  manufacture, label, distribute, ship, or sell any of the household, body care or baby care products at

11  issue in this litigation.  *See* ECF No. 36 at ¶¶6, 10-13, 27.  WFMI does **not** set policies for the

12  distribution or sale of these products and does **not** manage or control the operations of WFM

13  California.  *Id.* at ¶¶7-9, 26.  More importantly, as discussed in Section II(A)(2)(a) above, Plaintiffs

14  have not brought forth any evidence to establish that WFMI actually engages in these types of

15  commercial activities.

16  The same is generally true of WFM Services except that it has some responsibility for the

17  marketing and advertising of the 365 and Whole Foods brand private label products and is

18  responsible for the content and design of the Whole Foods Market website.  *See* ECF No. 36 at

19  ¶¶26-29.  Any such activity, however, would have been performed in Austin, Texas where WFM

20  Services and its employees are located.  Further, Plaintiffs' claims do not arise from or relate to

21  WFM Services' marketing, advertising or website activity.  Plaintiffs make clear in their

22  Opposition that their false advertising claims are based solely on product label statements and not

23  on any of the broader marketing or website advertising statements.  *See* ECF No. 38-1 at 1:18-19

24  ("Plaintiffs sue WF for statements it made on the product packages); 16:11-12 ("Yet Plaintiffs' suit

25  is based solely on the false representations on WF's product labels); 19:22 ("Yet Plaintiffs do not

26  bring stand-alone claims based on WF's off-the-label statements."); 25:6-7 ("Plaintiffs do not bring

27  stand-alone claims based on WF's statements made in its websites, SEC filings, and promotional

28  materials.").  Plaintiffs have failed to demonstrate any out-of-state activities or action(s) by WFM

1   Services from which Plaintiffs' claims arise or result.

2       Plaintiffs lastly argue, as they did for general jurisdiction, that the contacts of WFM

3   California can be imputed to WFMI for purposes of establishing specific jurisdiction because WFM

4   California was WFMI's agent and performed services sufficiently important to WFMI.  *See* ECF

5   No. 13:6-16.  The Ninth Circuit, however, has confirmed that the Supreme Court's decision in

6   *Daimler AG v. Bauman* abrogates its prior agency test, which was addressed in *Harris Rutsky &*

7   *Co. Ins. Services, Inc. v. Bell & Clements, Ltd.* and on which Plaintiffs rely as support for their

8   agency argument.  *See Williams v. Yamaha Motor Co., Ltd.*, 851 F.3d 1015, 1024 (9th Cir. 2017)

9   ("the *Daimler* Court's criticism of the *Unocal* standard [i.e., agency test] found fault with the

10  standard's own internal logic, and therefore applies with equal force regardless of whether the

11  standard is used to establish general or specific jurisdiction.").  Further, as discussed in Section

12  II(A)(2)(b) above, Plaintiffs have not presented any factual evidence that would support Plaintiffs'

13  argument under an alter ego theory of jurisdiction.  Thus, Plaintiffs have failed to demonstrate any

14  basis for specific jurisdiction over WFMI or WFM Services.

15  **B.      The Court Does Not Have Pendent Personal Jurisdiction Over Plaintiff Starr's**

16  **         Claims.**

17      The United States Supreme Court decision in *Bristol-Myers Squibb Co. v. Superior Court of*

18  *California,* 582 U.S. __, 137 S.Ct. 1773, 1781 (2017), holds that specific jurisdiction must be

19  established as to each of plaintiff's separate claims.  Because Plaintiff Starr has not alleged that she

20  suffered any injury in California, nor any California contacts connecting any of defendant's in-state

21  activities to her alleged out-of-state purchases and injuries, due process does not permit exercise of

22  specific personal jurisdiction over her claims in California.  *Bristol-Myers Squibb,* 137 S.Ct. at

23  1781.  Plaintiffs respond by arguing that the Court may, in its discretion, exercise pendent personal

24  jurisdiction over Starr's claims because:  1) Starr is a member of plaintiff Kellman's nationwide

25  class and 2) it would be more efficient.  ECF No. 38-1 at 13:24-15:8.  Plaintiffs' arguments fail for

26  three reasons.

27      *First*, pendent personal jurisdiction does apply to plaintiff Starr's claims.  In *Action*

28  *Embroidery Corp. v. Atlantic Embroidery, Inc.*, cited by Plaintiffs, the Ninth Circuit held that a

court may, in its discretion, exercise pendent personal jurisdiction over a nonresident defendant "with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).  Plaintiffs Starr's and Kellman's claims, however, do not arise out of a common nucleus of operative facts.  *See Spratley v. FCA US LLP*, 2017 WL 4023348, *6-8 (N.D.N.Y. Sept. 12, 2017) (declining to exercise pendant jurisdiction over out-of-state plaintiffs' claims that "arise from the laws of their respective states").  As the chart below demonstrates, their claims are based on **different products** with **different label statements** that they purchased in **different states** from **different defendants**.  *See* ECF No. 31 at ¶¶17, 27.  Plaintiffs Kellman and Starr also seek to represent **different classes of consumers** based on **different state statutes**.  ECF No. 31 at ¶¶222-23.

| | **KELLMAN'S CLAIMS** | **STARR'S CLAIMS** |
|---|---|---|
| **Purchased Products:** | ʃ     365 Gentle Skin Cleaner<br>ʃ     365 Moisturizing Lotion | ʃ     365 Moisturizing Lotion<br>ʃ     365 Bubble Bath<br>ʃ     365 Facial Tissue<br>ʃ     365 Paper Towels |
| **Label Statements:** | ʃ     *Cleanser*:  Independent lab results show this gentle formula is hypoallergenic and non-comedogenic<br>ʃ     *Lotion*:  Independent lab results show this daily moisturizer is hypoallergenic and non-comedogenic | ʃ     *Lotion*:  Independent lab results show this daily moisturizer is hypoallergenic and non-comedogenic<br>ʃ     *Bubble Bath*:  Hypoallergenic<br>ʃ     *Tissue*:  Hypoallergenic<br>ʃ     *Towels*:  Hypoallergenic |
| **State of Purchase:** | California | New York |
| **Purchased From:** | WFM California | WFM Group |
| **Class of Consumers:** | California consumers who purchased products from WFM California | New York consumers who purchased products from WFM Group |
| **Application State Statutes:** | California CLRA, UCL and FAL | New York Gen. Bus. Law §§ 349, 350 |

In adopting the concept of pendent personal jurisdiction, the Ninth Circuit reasoned that "[w]hen a defendant must appear in a forum to defend against one claim, it is often reasonable to compel defendant to answer other claims in the same suit arising out of a common nucleus of facts." *Id.* at 1181.  Defendants WFM Group and WFM California, however, are different corporate entities that are not liable for the debts, obligations or liabilities of the other.  Plaintiff Starr does not have a claim against defendant WFM California because she did not purchase any of the challenged products in California.  Further, as discussed in Section II(A) above, WFM Group, WFMI and WFM Services are not subject to personal jurisdiction in California.  As such, there is no basis for pendent personal jurisdiction for claims against these three defendants based on the Court's reasoning in *Action Embroidery*.

In short, Plaintiff Starr's claims involve an out-of-state plaintiff suing out-of-state defendants for out-of-state-activities and injuries arising under New York state law.  Her claims fall squarely within the due process concerns addressed in *Bristol-Myers Squibb*.  *See* ECF No. 35 at 13:7-14:22.  As such, due process does not permit the exercise of specific personal jurisdiction over plaintiff Starr's claims.[4]

*Second,* plaintiff Starr is not a member of Kellman's putative nationwide class.  Plaintiff Starr purchased her products from WFM Group and Plaintiff Kellman purchased her products WFM California.  ECF No. 36 at ¶18.  The liability of WFM Group is not an issue within Kellman's alleged claims just as the liability of WFM California is not an issue within Starr's alleged claims.  Also, there is no basis for applying California's consumer statutes to WFM Group's sales in New York or any of the other states in which it operates Whole Foods Market

---

[4]  In *Sloan v. General Motors, LLC*, also cited by Plaintiffs, the district court extended the concept of pendent personal jurisdiction to claims of a nonresident plaintiff.  *Sloan v.  General Motors, LLC*, 287 F. Supp. 3d 840, 861-862 (N.D. Cal. Feb. 7, 2018).  In doing so, however, the district court rejected the application of *Bristol-Myers Squibb* because plaintiffs' claims involved a federal question (which conferred federal question jurisdiction) and, as such, did not offend the due process concern address in the Supreme Court's decision.  *Id.* at 859 ("There is no risk of a state court exceeding the bounds of its state's sovereignty and subjecting residents of another state to the coercing power of its court.").  The *Sloan* court, however, expressly noted that it was not addressing "whether or how *Bristol-Myers* would apply if jurisdiction arose exclusively on the basis of diversity." *Id.* at 858, fn. 2.  This case does not involve a federal question and is based exclusively on diversity jurisdiction.  As such, *Bristol-Myers* controls.

1   stores.  Thus, while the scope of plaintiff Kellman's putative class claims has not yet been

2   determined, there is simply no basis to include plaintiff Starr's alleged claim in that class.

3            *Third,* exercising pendent personal jurisdiction over Starr's claims would not further the

4   interests of efficiency.  Plaintiffs argue it would be more efficient to allow Starr to pursue her claim

5   in California because she would otherwise need to file a separate action in New York thereby

6   burdening the court system and parties.  ECF No. 38-1 at 15:4-8.  A separate action, however, is

7   unavoidable.  WFM Group, which is the entity that would have sold these products to New York

8   consumers, is not subject to personal jurisdiction in California.  Plaintiffs do not contest this point

9   in their Opposition.  As such, Plaintiff Starr and any other New York consumer who wishes to

10  pursue these alleged claims against WFM Group will need to file their claims in New York or one

11  of the other states in which WFM Group is subject to personal jurisdiction.  The interests of

12  efficiency, therefore, do not support the exercise of pendent personal jurisdiction and the Court

13  should dismiss Starr's claims.

14  **C.        Plaintiffs Lack Standing to Sue on Products They Never Purchased.**

15           Plaintiff Kellman purchased two body care products (365 Gentile Skin Cleanser and 365

16  Moisturizer Lotion) and Plaintiff Starr purchased two body care and two household products (365

17  Moisturizing Lotion, 365 Bubble Bath, 365 Facial Tissue and 365 Paper Towels).  ECF No. 31 at

18  ¶¶17, 27.  Plaintiffs, however, purport to bring suit on twenty-five (25) products, including lotions,

19  washes, bubble baths, shampoo, laundry detergents, paper towels, facial tissue, diapers, and

20  training pants.[5]  *See* ECF No. 31 at ¶¶17, 27, 144, 188 and Exhs. 1 & 8.  Plaintiffs make two

21  arguments in response to Defendants challenge that Plaintiffs lack standing to pursue claims based

22  on the 20 products they did not purchase:  (1)  the Court should defer any question of standing or

23  product similarity to class certification; (2) the unpurchased products are sufficiently similar to

24  proceed.  ECF No. 38-1 at 15:21-19:17.  Both arguments lack merit.

25  ─────────────────────
    [5] Plaintiffs claim in their Opposition that the SAC only encompasses the 12 products listed in
26  paragraph 144 of the SAC.  ECF No. 38-1 at 15, fns. 5-6.  The allegations and Exhibits of the SAC,
    however, challenge 25 total products or varieties of products, including the paper towels Starr
27  alleges she purchased and diapers, training pants and detergents she did not.  If Plaintiffs are now
    disavowing any claim based on these household products, then the allegations in paragraphs 27,
28  188 and Exhibits 1 and 8 of the SAC should be stricken.

1.     **Plaintiffs Must Establish Their Standing to Sue for Products They Never Purchased.**

Plaintiffs incorrectly contend the Court does not need to subject Plaintiffs' claims based on unpurchased products to any standing scrutiny because they are entitled to sue on behalf of absent class members who may have purchased those products.  ECF No. 38-1 at 16:16-17:9.  They cite cases decided under Fed. R. Civ. P. 23 where courts have concluded that a purchaser of one product may sometimes serve as a class representative for a broader class.  *Id.*

Plaintiffs confuse two issues:  (i) whether a plaintiff has standing to sue for products she did not purchase, and (ii) whether a plaintiff that purchased one product can ever be an adequate class representative for a class that includes purchasers of products plaintiff herself did not buy.  The first question – standing – is a threshold jurisdictional issue that must be decided before class certification.  *See In re Wells Fargo Mortgage Bank-Certificates Litig.*, 712 F. Supp. 2d 958, 964 (N.D. Cal. Apr. 22, 2010) ("Standing 'is a jurisdictional element that must be satisfied prior to class certification.'") (quoting *Laduke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985)).

Plaintiffs do not cite a single case for the proposition that claims based on unpurchased products should not be subjected to any standing scrutiny.  Some scrutiny certainly must be applied.  For example, a plaintiff who purchased skin lotion should not be allowed to include within her claim diapers, training pants, detergents or shampoos she did not purchase without demonstrating some level of similarity.  *See, e.g., Romero v. HP, Inc.*, 2017 WL 386237, **7-8 (N.D. Jan. 27, 2017) (rejecting approach of deferring issue to class certification in favor of "substantial similarity" approach).  What otherwise would be the outer boundary that would prevent a plaintiff from including the proverbial "kitchen sink" in an effort expand discovery and litigation expenses?  The cases cited by Plaintiffs do not stand for the extreme position they assert, but instead fit within the permissive end of the substantial similarity approach.

Plaintiffs do not address the numerous decisions that apply a bright-line rule to reject claims on unpurchased products or those that have examined standing as a threshold jurisdictional issue and concluded plaintiffs cannot bring suit on behalf of an uncertified class consisting of purchasers of dissimilar products.  *See* ECF No. 35 at 15:2-18:14.  These approaches are also more consistent

with the narrower standings requirements of the UCL, FAL and CLRA.  *See* ECF No. 35 at 15:14-16:7.  Further, these decisions are not wholly irreconcilable with the cases cited by Plaintiffs because Plaintiffs cases do not support their attempt to expand the scope of this case to products totally dissimilar from the purchased products.  *Clancy v. The Bromley Tea Co.,* 308 F.R.D. 564, 570-71 (N.D. Cal. Aug. 9, 2013) (same representation on different flavors of tea); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3 145, 158 (2d Cir. 2012) (in securities fraud context: some claims as to similar unpurchased mortgaged-back securities from different offerings can survive, but others dismissed because the misrepresentations do not implicate the same set of concerns); *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410, 423-24 (6th Cir. 1998) (challenge to same procedure in similar plans); *Donahue v. Apple, Inc.*, 871 F. Supp. 2d 913, 922 (N.D. Cal. 2012) (same defect in different versions of iPhone);  *Brown v. Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 891-92 (N.D. Cal. 2012) ("[w]here the alleged misrepresentation or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased.");  *Koh v. S.C. Johnson & Sons, Inc.*, 2010 WL 94265, *3 (N.D. Cal. Jan. 6, 2010) (identical misrepresentations on carpet and glass cleaner).[6]  Accordingly, the Court should dismiss claims based on unpurchased products that are not sufficiently similar to the purchased products.

## 2. The Unpurchased Products Are Not Sufficiently Similar to Plaintiff Kellman's Purchased Products.

Plaintiff Kellman seeks to proceed on several products she did not purchase, including bubble bath, shampoo, laundry detergent, kid's foaming wash, diapers, training pants, facial and bath tissue, and paper towels (the "Non-Purchased Products").  *See* ECF No. 31 at ¶¶17, 144; Exhs. 1, 8.  Plaintiffs contend these Non-Purchased Products are the same as the products Kellman purchased.  ECF No. 38-1 at 17:12-19:17.  For the reasons addressed in Defendants' moving papers (ECF No. 35 at 17:17-18:14) and below, the Non-Purchased Products are not sufficiently similar.

**Different Product Types:**  The Non-Purchased Products are not just "lotions and washes"

---

[6]  This early decision by Judge Whyte preceded his bright-line rejection of standing for unpurchased products in subsequent food-labeling cases.  *See, e.g., Lanoviz v. Twinings North America*, 2013 WL 675929, *2 (N.D. Cal. Feb. 25, 2013); *Ivie v. Kraft Foods Global*, 2013 WL 685372, *5 (N.D. Cal. Feb. 25, 2013).

as Plaintiffs claim, but include bubble bath, shampoo, laundry detergent, diapers, training pants, facial and bath tissue, and paper towels.  ECF No. 31 at ¶¶144, 188; Exhs. 1 and 8.  They also include products developed for children as opposed to the adult products Kellman purchased.  *Id.*

**Different Representation:**  Plaintiffs argue the representations are all the same because they all misleadingly claim to be "hypoallergenic."  However, as Plaintiffs like to note when it suits them, words matter.  Both products Kellman purchased state that independent lab tests show the products are hypoallergenic.  Plaintiffs have not tested these products to see whether or not they are hypoallergenic.  They also have not alleged that they actually experienced an allergic reaction after using the products they purchased or know of anyone who has.  *See* ECF No. 31 at ¶¶19-21, 29-31. Rather, they allege the products contain ingredients that ***might*** cause a reaction in a substantial number of people.  ECF No. 31 at ¶¶122-136.  Hypoallergenic means the product is less likely to cause a reaction.  Thus, a statement that says the product has been tested to confirm it is less likely to cause a reaction than a similar product means something and means something different than just saying "hypoallergenic."

**Different Ingredients:**  Plaintiffs do not allege the ingredients of the diapers, training pants, paper towels, facial tissue or bath tissue.  They also do not allege any reason why those household or bath products might contain the same ingredients or alleged sensitizers as a lotion or skin cleanser.  Further, according to Plaintiffs' chart, the fourth product down (detergent) does not contain any of the same alleged sensitizers as the products Kellman purchased.  The rest only share one or two alleged sensitizers (usually glycerin or phenoxyethanol) amongst a number of other different ingredients.  Moreover, there are no allegations as to the amount or concentration of these alleged sensitizers in each product or whether those amounts are similar to the amounts in the products Kellman purchased.

**D.     The Court Should Grant Defendants' Motion to Strike the SEC, Website and Other Marketing Statements Plaintiffs Did Not See or Rely Upon.**

Plaintiffs concede that they cannot bring standalone claims based on advertising or marketing statements they did not see or on which they did not rely.  ECF No. 38-1 at 19:19-20:3. As such, the Court should grant Defendants' motion to strike paragraphs nos. 12, 40, 50, 139-141,

1   143, 182, 194-195, 197, 203 and 258, as well as portions of Exhibit 1 and all of Exhibits 2-7.

2   **E.      The SAC Does Not Plausibly Allege That Defendants' Representations on the Products**

3   **Purchased in California Were False or Misleading.**

4          Defendants demonstrated in their moving papers that Kellman's claims are based on

5   implausible claims of deception because reasonable consumers interpret "hypoallergenic" as it is

6   commonly defined, i.e., less likely to cause an allergic response than other similar products, and not

7   as a promise of a complete lack of skin sensitizers, allergens or allergic responses.[7]  Plaintiffs make

8   two arguments in response:  (1) Plaintiffs do not define "hypoallergenic" to mean no skin

9   sensitizers or potential allergic responses and (2) Whole Foods' products are not "hypoallergenic"

10  because they contain substantial amounts of skin sensitizers.  *See* ECF No. 38-1 at 21:18-23:26.

11  Both arguments lack merit.

12         The first of these arguments fails because it is impossible to reconcile with Plaintiffs'

13  allegations and damage theory.  The SAC alleges that a "hypoallergenic" product cannot contain

14  any skin sensitizers or substances that might cause an allergic reaction – even if that product is

15  hypoallergenic in the actual sense of the word because, as formulated, it has little or no likelihood

16  of causing an allergic response.  *See* ECF No. 31 at ¶124 ("a product that is a skin sensitizer is not

17  hypoallergenic"); ¶125 ("Consumers believe and expect that a product that is labeled as

18  hypoallergenic does not contain skin sensitizers at a concentration that could elicit an allergic

19  response in sensitized individuals"); ¶131 ("Consumers also believe and expect that a

20  hypoallergenic product will not cause skin irritation, skin corrosion, or eye damage when used as

21  directed"); ¶136 ("consumers reasonably expect and believe that when a product is labeled as

22  'hypoallergenic,' this representation is true not just for the final formulation, but to every ingredient

23  in the product"); ¶147 (contrary to its promise all Whole Foods' products "contain known skin

24  sensitizers").  In fact, Plaintiffs' damages are based on the idea that Plaintiffs would not have

25  purchased these products had they known the products contained skin sensitizers – not the amount

26  or level of sensitizer in the product.  ECF No. 31 at ¶¶23-24, 33-34.  Thus, the actual interpretation

27

28  [7] Defendants' response to Plaintiffs' arguments about the products' actual label statements are addressed in Section II(C)(2) above and will not be repeated here.

1   or definition alleged in the SAC is inconsistent with how reasonable consumers interpret and

2   understand the term "hypoallergenic."

3          Plaintiffs' second argument fails for the same reason.  Reasonable consumers simply do not

4   think in terms of skin sensitizers, sensitized individuals or 0.1% concentration levels.  They think in

5   terms of the likelihood this product may cause an allergic response.  The fact that Plaintiffs can

6   point to OSHA regulations to support their terms and concentration levels is immaterial.  OSHA

7   has not defined hypoallergenic and its regulations have nothing to do with the labeling of cosmetics

8   and other body care products.  Indeed, the regulations explicitly state that they do not apply to

9   "[c]osmetics which are packaged for sale to consumers in a retail establishment.  *See* 29 C.F.R. §

10  1910.1200(b)(6)(viii).

11         The SAC does allege Plaintiffs suffered an allergic reaction after using the contested

12  products.  *See* ECF No. 31 at ¶¶17-36.  It also does not allege that the products have been tested to

13  determine their likelihood of causing an allergic reaction or even the concentration levels of the

14  various ingredients in Whole Foods' products as compared to other similar products.  Instead, it

15  relies entirely on the alleged inclusion of skin sensitizers.  As such, the SAC does not allege a

16  plausible theory or basis of deception.

17  **F.     Plaintiffs' Warranty Claims Fail as a Matter of Law.**

18         The precise statement on the label of the two products Kellman purchased does not promise

19  that those products are free of all possible skin sensitizers or will never cause an allergic response.

20  Further, the SAC is devoid of any factual allegations that suggest Whole Foods did not test these

21  products to determine if they were hypoallergenic.  Accordingly, Plaintiffs' express warranty claim

22  fails as a matter of law.

**III.     CONCLUSION**

23

24         For the foregoing reasons, Defendants respectfully requests the Court grant its motion to

25  dismiss and motion to strike.

26  Dated:  May 18, 2018                              BLAXTER | BLACKMAN LLP

27                                    By   _____
                                                      */s/ Brian R. Blackman*
28                                                  BRIAN R. BLACKMAN
                                                    Attorneys for Defendants