# Exhibit 5

EX-10.1 2 wfmq12016ex101.htm EXHIBIT 10.1

**NOTE:** A request for confidential treatment has been made with respect to the portions of the following document that are marked [*CONFIDENTIAL*]. The redacted portions have been filed separately with the SEC.

**Exhibit 10.1**

## AGREEMENT FOR DISTRIBUTION OF PRODUCTS

This Agreement for Distribution of Products (the "**Agreement**") is entered into October 30, 2015 between Whole Foods Market Distribution, Inc., a Delaware corporation ("**WFM**"), and United Natural Foods, Inc., a Delaware corporation ("**UNFI**").

### RECITALS

A. WFM and its affiliates and subsidiaries are primarily engaged in the sale of natural and organic products. Their operations include retail stores ("**WFM Stores**"), food production/repacking facilities and distribution centers (together, including WFM Stores, the "**WFM Locations**"). WFM and its affiliates and subsidiaries have WFM Locations in a number of separate regions which currently include the Florida Region, Mid-Atlantic Region, Mid-West Region, Pacific Northwest Region, Northern Atlantic Region, Northeast Region, Northern California Region, Rocky Mountain Region, South Region, Southern Pacific Region, and the Southwest Region (each a "**WFM Region**" and collectively the "**WFM Regions**").

B. UNFI and its affiliates, subsidiaries and related parties including but not limited to, all distribution arms of the foregoing parties (together with UNFI, the "**UNFI Parties**") operate a group of distribution centers (individually a "**UNFI DC**" and collectively the "**UNFI DCs**") that sell natural and organic products. For purposes of this Agreement UNFI Parties specifically excludes Tony's Fine Foods and Albert's Organics, Inc. and manufacturing arms and retail divisions of UNFI and its affiliates subsidiaries and related parties.

C. The parties are currently parties to an Agreement for the Distribution of Products dated as of September 26, 2006, as amended (the "Prior Agreement"). The parties desire to terminate the Prior Agreement and enter into this Agreement to set forth the terms upon which UNFI will continue to sell and distribute to WFM Locations and WFM Locations will continue to purchase certain goods and services from UNFI.

NOW, THEREFORE, the parties agree as follows:

1. <u>Term</u>. This Agreement shall have an initial term of ten years (the "**Term**") commencing as of September 28, 2015 (the "Effective Date") and expiring on September 28, 2025.

2. <u>Scope</u>. This Agreement applies to any product purchased by a WFM Location in the continental United States from the UNFI Parties (in any case a "**Product**" and collectively "**Products**").

3. <u>Distribution Arrangement</u>.

(a) The pricing terms set forth in this Agreement will remain in effect as long as WFM uses UNFI as its "**Primary Distributor**." WFM is deemed to have used UNFI as its Primary Distributor if the following three conditions are met:

1

**NOTE: A request for confidential treatment has been made with respect to the portions of the following document that are marked [*CONFIDENTIAL*]. The redacted portions have been filed separately with the SEC.**

(i) Starting September 26, 2016 (WFM's Fiscal Year 2017), each WFM Region (excluding all WFM Stores outside of the continental United States) purchases from the UNFI Parties, at a minimum, [*CONFIDENTIAL*] in Products as were purchased by [*CONFIDENTIAL*];

(ii) Starting September 26, 2017, the cost of Products purchased by each WFM Region (excluding all WFM Stores outside of the continental United States) from UNFI Parties, [*CONFIDENTIAL*], shall be, [*CONFIDENTIAL*]; and

(iii) the average cost per case of Product delivered in [*CONFIDENTIAL*] for the [*CONFIDENTIAL*] shall be, at a minimum, [*CONFIDENTIAL*]. Average cost per case is defined as [*CONFIDENTIAL*]. Items sold [*CONFIDENTIAL*].

For the avoidance of doubt, the above calculations will be made by UNFI at the end of each WFM Period, based upon that period and the prior twelve (12) WFM Periods, for a total of thirteen (13) WFM Periods.

The average cost of orders submitted to the UNFI Parties for Products that are out of stock ("**OOS**") will be included in the calculation as purchases from UNFI Parties for determining whether both (a)(i) and (a)(ii) have been satisfied. The following purchases by WFM Stores are not considered to be purchases from a wholesale natural grocery distributor and therefore will not be included in determining the dollar amount of WFM Store product purchases for purposes of this Section 3(a)(ii): (A) purchases by WFM Stores from WFM or any of its affiliates or subsidiaries (collectively, the "**WFM Parties**"), including, but not limited to, purchases from a WFM distribution center, (B) purchases by WFM Store from the manufacturer of a product, (C) purchases by WFM Stores from non natural grocery distributors including, but not limited to, broad-line food service distributors, non-food distributors and specialty distributors such as but not limited to cheese, produce, meat, seafood, or alcoholic beverage distributors. If at any time UNFI believes that WFM has not satisfied the conditions set forth in Section 3(a)(i), 3(a)(ii) and/or 3(a)(iii), UNFI will notify WFM in writing. WFM will have 3 WFM Periods from receipt of such notice to adjust purchases to meet the requirements. If WFM fails to cure the noncompliance in 3 WFM Periods (calculated on a consecutive 13 WFM Period basis) from the receipt of notice, UNFI's sole remedy ((except as set forth in Section 20(c)) will be to renegotiate the "**Gross Profit Margin Percent**" identified in Section 8(d) below.

(b) UNFI agrees to stock all new Products requested by WFM after the Effective Date if a majority of the WFM Stores (but in any case, not less than six WFM Stores or all the WFM Stores in a WFM Region if the WFM Region contains less than six WFM Stores) in the applicable WFM Region agree to purchase the new Product, including, but not limited to, Exclusives (defined in Section 5(b)), Private Label SKUs (defined in Section 6(a)) and Control Label SKUs (defined in Section 6(a)). All new Product vendors must meet UNFI's reasonable requirements for new vendors.

Any single WFM Store requests for a new Product will be reviewed on a case by case basis.

(c)　　The parties agree that if UNFI purchases the assets or equity and/or otherwise assumes the rights and/or obligations of any entity which, at the time of such purchase/assumption, is providing products directly to WFM and/or acting as a distributor of other parties' products to WFM, then the following

2

**NOTE: A request for confidential treatment has been made with respect to the portions of the following document that are marked [*CONFIDENTIAL*]. The redacted portions have been filed separately with the SEC.**

provisions shall apply during the remainder of the term of this Agreement: (i) if the products being supplied to WFM by such entity are the same or similar to the Products currently being provided by UNFI to WFM, then WFM may choose to bring such products under the definition of Products and require UNFI to sell such products under the terms of this Agreement, including without limitation WFM's purchase obligations set forth in Section 3(a) and UNFI's pricing obligations set forth in Section 7(a) and (ii) if the products being supplied to WFM by such entity are not the same or similar to the Products currently being provided by UNFI to WFM, then UNFI and WFM may choose to negotiate in good faith to include such products under the terms of this Agreement, with such changes as may be necessary or appropriate due to the nature of the products being included.

4. Reports. At WFM's reasonable request, UNFI will provide reports to WFM that include all information and data relevant to an evaluation of the WFM account and UNFI's performance under this Agreement, including, but not limited to, the following reports: (i) all reports requested by WFM to demonstrate compliance with the terms of this Agreement; (ii) any reports of the type provided to WFM prior to the Effective Date; and (iii) all reports requested in this Agreement. In addition, WFM may submit requests to UNFI for additional information and data relating to WFM's account and UNFI will prepare reports for WFM setting forth the requested information and data. UNFI will use commercially reasonable efforts to provide all such information and data in a timely manner and in the format requested by WFM. WFM may specify either a hard copy or electronic copy. For electronic copies, WFM may specific whether the report will be delivered in CSV, Excel or Word or another format reasonably acceptable to UNFI.

5. Branded Products.

   (a) Quality Standards. WFM has a list of ingredients located at http://supplier.wholefoodsmarket.com/ (which the WFM Parties may modify from time to time) that WFM does not permit in any products sold at WFM Stores (the "**Unacceptable Ingredient List**"). UNFI agrees it will not knowingly sell WFM Products that contain ingredients listed on the Unacceptable Ingredient List.

   (b) Limited Time Exclusives. From time to time, WFM and certain Product manufacturers or suppliers may agree that a Product provided by such manufacturer or supplier will be sold exclusively to all WFM Stores ("**Exclusives**"). If a new Exclusive Product meets the requirements in Section 3(b), UNFI will purchase and stock Exclusives in inventory and for a period specified by WFM (not to exceed four UNFI Pricing Periods per UNFI DC unless mutually agreed upon by the parties), UNFI will sell the Product only to WFM Locations. No WFM Region or group of regions may designate a Product as Exclusive except for the global Whole Body and Grocery teams; provided that the global Whole Body and Grocery teams may designate an Exclusive item to launch in one or more regions versus nationally. UNFI will not be obligated to carry more than [*CONFIDENTIAL*] Grocery Exclusive items and [*CONFIDENTIAL*] Whole Body Exclusive items. If at any time sales of any Exclusive are less than [*CONFIDENTIAL*] cases per month per UNFI DC, UNFI may upon written

notice discontinue such Exclusive in which case WFM shall immediately buy all such Exclusive in UNFI's inventory, provided that UNFI may, in the alternative, choose to make such Product non-exclusive.

3

**NOTE: A request for confidential treatment has been made with respect to the portions of the following document that are marked [\*CONFIDENTIAL\*]. The redacted portions have been filed separately with the SEC.**

6.   Private Label and Control Label Products; Nationally Branded Products; Small Format 365 Stores.

(a)   Inventory. "**Private Label SKUs**" will mean those Products that WFM Locations offer from time to time with packaging that includes WFM proprietary labels including, but not limited to, "Whole Foods" "365 Everyday Value" "365 Organic Everyday Value" "Whole Kids Organic" "Whole Body" "Whole Pantry" and such other trade names or marks used by WFM Parties from time to time. In addition to Private Label SKUs, certain manufacturers or suppliers may agree from time to time to produce products for WFM that include manufacturer or supplier proprietary labels used exclusively on products sold to WFM Locations ("**Control Label SKUs**"). UNFI will purchase and stock the Private Label SKUs and the Control Label SKUs requested by WFM from time to time in the UNFI DCs designated by WFM. UNFI will provide WFM with a current list of individuals designated as contacts for Private Label SKU and Control Label SKU inventory matters and will keep WFM informed of any changes to contact information.

(b)   Report. UNFI recognizes the importance of delivering all information regarding Private Label SKUs and Control Label SKUs in a clear, concise and complete manner. UNFI will continue to provide WFM with a report of UNFI's Private Label SKU inventory and Control Label SKU inventory in a form mutually agreed upon by the parties once every WFM Period as identified on Exhibit A (the "**Private Label Report**"). The Private Label Report will be per UNFI DC and UNFI in total and will include information about usage, stock level, amount on order and how many times each Private Label SKU and Control Label SKU turned during a WFM Period (an "**Inventory Minimum Turn Period**").

(c)   Product Hold; Stock Recovery, Withdrawals and Recalls.

(i)   All notices relating to a Product hold, stock recovery, withdrawal or recall of a Private Label SKU or Control Label SKU may be communicated to UNFI by a member of the WFM Private Label Team (a "**Product Action Notice**"). UNFI will cooperate fully with the WFM Private Label Team, respond promptly to any Product Action Notice and confirm receipt of any such notice by email as soon as possible but in every case, within 24 hours. UNFI shall keep the WFM Private Label Team informed of the status of UNFI inventory subject to a Product Action Notice and all actions performed by a UNFI Party in response to any such notice. If UNFI receives notice from anyone other than a WFM Private Label Team member that involves a Product hold, stock recovery, withdrawal or recall associated with a Private Label SKU or a Control Label SKU, UNFI will immediately notify a member of the WFM Private Label Team. The Private Label SKU or Control Label SKU involved in this notice may be placed on hold; however, no other action should be taken until a directive is received from the WFM Private Label Team.

(ii) Product subject to a Product hold, stock recovery, withdrawal or recall of a Private Label SKU or a Control Label SKU inventory whether due to a defect, damage, misbranding or quality issue is considered "**Rejected Inventory**." UNFI will collect any credits owed UNFI as a result of Rejected Inventory directly from the Product supplier or manufacturer. WFM will not be required to pay or reimburse UNFI for any Rejected Inventory unless the Product becomes Rejected Inventory due to an act or omission of WFM. UNFI will indemnify WFM for any losses incurred by the WFM Parties resulting from a UNFI Party's failure to comply with a Product Action Notice.

4

**NOTE: A request for confidential treatment has been made with respect to the portions of the following document that are marked [*CONFIDENTIAL*]. The redacted portions have been filed separately with the SEC.**

(d)   Product Sales. UNFI agrees to take commercially reasonable efforts to prevent any UNFI Party from selling or donating or otherwise distributing or conveying any Private Label SKU or any Control Label SKU to any distribution network, stores, entities or persons not approved in advance by a WFM Private Label Team Member. UNFI agrees to fully cooperate with WFM Private Label Team members and their representatives and designees in any investigation or litigation relating to any unauthorized sale. UNFI will [*CONFIDENTIAL*] unless UNFI has [*CONFIDENTIAL*]. If a UNFI Party breaches this section, UNFI agrees to pay WFM [*CONFIDENTIAL*] per breach.

(e)   WFM Responsibility for Inventory.

(i)   Termination of Private Label SKU or Control Label SKU. Except for (x) Rejected Inventory, (y) inventory that is out of date or damaged or in unacceptable condition due to UNFI's acts or omissions including, but not limited to, improper storage, improper rotation, improper ordering, damage incurred during transportation by UNFI or its designees or (z) missing, short or lost Product (shrink), if WFM terminates a Private Label SKU or a Control Label SKU, WFM will be responsible for and will reimburse UNFI for the applicable Private Label SKU or Control Label SKU inventory held by UNFI not to exceed the greater of (i) a 90 day supply based upon the WFM Locations' past purchasing practices, or, if a new Product, projections provided in writing by WFM, or (ii) the supplier's minimum order quantity. If WFM instructs UNFI to destroy a Private Label SKU or a Control Label SKU held in inventory, UNFI will promptly arrange for the destruction of the applicable Products and will promptly provide WFM with a certificate of destruction covering all applicable Products.

(ii)   Overstock and Short-Dated Private Label SKU or Control Label SKU. Subject to Section 6(e)(i) and UNFI's compliance with the Code Date Policy, each party's responsibility for overstocks and short-dated Private Label SKUs and Control Label SKUs is set forth on Exhibit F and is based on the amount of notice given to WFM and the level of inventory held by UNFI not to exceed the greater of (x) a 90 day supply based upon the WFM Locations' past purchasing practices, or, if a new Product, projections provided in writing by WFM, or (y) the supplier's minimum order quantity.

(f)   Slow Moving Products. Private Label SKUs and Control Label SKUs will be priced for invoice purposes in the same manner as other Products purchased by WFM Locations from UNFI Parties except for the Products that qualify as slow moving Products ("**Slow Moving Products**"). If a UNFI DC sold less than [*CONFIDENTIAL*] but greater than or equal to [*CONFIDENTIAL*] cases of a Private Label SKU or a Control Label SKU during a UNFI Pricing Period, WFM will pay a Slow Moving Product up charge during the period following the subsequent UNFI Pricing Period equal to [*CONFIDENTIAL*]. If a UNFI DC sold less than [*CONFIDENTIAL*] cases of a Private Label SKU or a Control Label SKU during a WFM Period, WFM will pay a Slow Moving Product up charge during the period following the subsequent UNFI Pricing Period equal to [*CONFIDENTIAL*]. The Slow Moving Product up charge will be reflected in the invoice price.

The first [*CONFIDENTIAL*] UNFI Pricing Period that a Private Label SKU or Control Label SKU is stocked at a UNFI DC will not be included in any Slow Moving Product up charge. A UNFI Pricing Period must equal a minimum of [*CONFIDENTIAL*]. If any pallets in a UNFI DC contain a Private Label SKU or Control Label SKU that are older than [*CONFIDENTIAL*], WFM will pay a pallet charge to UNFI once per WFM Period equal to [*CONFIDENTIAL*] times [*CONFIDENTIAL*].

5

**NOTE: A request for confidential treatment has been made with respect to the portions of the following document that are marked [*CONFIDENTIAL*]. The redacted portions have been filed separately with the SEC.**

(g) <u>Lumper Fees</u>. The parties agree that the fees for "roll off" products, as defined in <u>Exhibit H</u> ("UNFI Unloading Policy") for any WFM Private Label SKU and Control Label SKU will be assessed the same fees as all other Products received at UNFI. All items that require breakdown or "fingerprinting", as defined in <u>Exhibit H</u> ("UNFI Unloading Policy") will be assessed the same fees as all other items received at UNFI, pursuant to UNFI's applicable fee schedules.

(h) <u>Reserved Inventory</u>. Each time WFM desires certain quantities of certain SKUs (but excluding Exclusives, Private Label SKUs and Control Label SKUs) be purchased or otherwise made available by UNFI for WFM in UNFI inventory for sale and availability only to WFM ("Reserved Inventory"), WFM shall provide to UNFI for UNFI's acknowledgment a written document containing: (1) a list of Reserved Inventory by SKU and (2) the quantity requirements of each SKU for the reserve periods specified by WFM (the "Reserved Inventory Requirements"). If UNFI cannot obtain the quantities of any SKU of Reserved Inventory set forth in the Reserved Inventory Requirements due to circumstances beyond its control, UNFI shall advise WFM as soon as it becomes aware of such issue, and WFM may modify the Reserved Inventory Requirements with respect to such SKUs accordingly. Once such modification is accomplished by WFM and resubmitted to UNFI, subject to UNFI's written acceptance, UNFI shall procure and reserve on behalf of WFM and sell the Reserved Inventory to WFM in accordance with the Reserved Inventory Requirements. By submitting the Reserved Inventory Requirements, WFM agrees to purchase all such Reserved Inventory in the quantities requested and upon the schedule set forth in the Reserved Inventory Requirements. Except for Reserved Inventory that is received from UNFI by WFM's designated third party logistics provider in unacceptable condition due to UNFI's acts or omissions including, but not limited to, improper storage, damage incurred during transportation by UNFI or its designees or (ii) documented at time of delivery as never received, i.e., missing or short, WFM's obligations to purchase the Reserved Inventory, as adjusted as provided above, are irrevocable and not subject to negotiation. If WFM attempts to cancel or fails or refuses to accept any delivery of any Reserved Inventory for any reason other than as set forth above, then WFM shall remain responsible for paying for such inventory, as well as the cost for any freight to return to UNFI's facility any Reserved Inventory which has already been shipped to WFM and otherwise make UNFI completely whole for any expenses, fees, damages or costs related to the Reserved Inventory at issue.

(i) <u>365 Stores</u>. WFM intends to open a number of stores with a smaller footprint, bannered as "365" Stores Except as expressly set forth in this Agreement, all of the terms of this Agreement shall apply to the 365 Stores:

(i) <u>Delivery Charge</u>. For any order less than [*CONFIDENTIAL*], an additional charge (the "Delivery Charge") will be added to the invoice as the difference between the Allowable Gross Margin on the invoice and the Allowable Gross Margin that would be charged on a [*CONFIDENTIAL*] order. For Example, assuming the current Allowable Gross Margin is [*CONFIDENTIAL*] and the invoice is [*CONFIDENTIAL*], the Delivery Charge would be [*CONFIDENTIAL*].

Fill orders for a new store will be exempt from the Delivery Charge; therefore, invoices will not be

subject to the Delivery Charge until the store is open.

6

**NOTE: A request for confidential treatment has been made with respect to the portions of the following document that are marked [*CONFIDENTIAL*]. The redacted portions have been filed separately with the SEC.**

    (ii)  Reserved Product Slots. At WFM's prior written request, UNFI shall reserve not more than [*CONFIDENTIAL*] slots in each UNFI Distribution Center for Products unique to the 365 Stores. With respect to the application of Section 6(f) above, all charges will apply immediately. There shall be no "grace period" for the first four UNFI Pricing Periods.

    (iii)  Gross Profit Margin Percent; Fill Rate. Sales to 365 Stores shall be included in determining Total Sales for purposes of determining the Gross Profit Margin Percent set forth in Section 8(d), but they shall not be included for determining average drop size for purposes of determining the Gross Profit Margin Percent set forth in Section 8(d).

7.  Invoicing Payment Terms.

  (a)  Product Invoices.

    (i)  Standard Invoices. Except for the EDLC Program (defined in Section 7(a)(iii)), UNFI will invoice WFM Locations for all Products purchased by WFM Locations consistent with practices in effect between WFM and UNFI prior to the Effective Date. The current practice applies to Products other than produce, wine and non-branded bulk items ("**Standard Products**"). For Standard Products, the price shown on the invoice to WFM (the "**Standard Invoice Product Price**") will equal UNFI's Cost (defined below) plus a [*CONFIDENTIAL*] markup or [*CONFIDENTIAL*] markup for Private Label SKUs and Control Label SKUs (the [*CONFIDENTIAL*] markup and [*CONFIDENTIAL*] markup collectively, the "**Agreed Upon Markup**") plus a [*CONFIDENTIAL*] Delivery Up Charge ("**Delivery Up Charge**"). "**Cost**" equals the manufacturer's list price (the "**MLP**") to UNFI for the Product, plus the Freight Charge. The "Freight Charge" means either [*CONFIDENTIAL*]. The Freight Charge incurred through UNFI's internal systems [*CONFIDENTIAL*]. A Freight Charge will not be applied to Products that include freight in the MLP (i.e. Products with delivered cost pricing). WFM may change the amount of [*CONFIDENTIAL*] at any time by [*CONFIDENTIAL*]. The foregoing change will be reflected in the next EDI cost files transmitted to WFM and the new [*CONFIDENTIAL*] becomes effective at the start of the next UNFI Pricing Period for such EDI cost files, not to exceed nine weeks.

    (ii)  Promotional Pricing. [*CONFIDENTIAL*]. Consistent with practices in effect between the parties prior to the Effective Date [*CONFIDENTIAL*]. UNFI agrees that [*CONFIDENTIAL*]. WFM Locations generally have two promotion cycles per WFM Period referred to as the "**A Cycle**" and the "**B Cycle**." Products that are scheduled to be part of a promotion during either the A Cycle or the B Cycle (or both A and B Cycles) will be invoiced by UNFI at promotional prices beginning five business days prior to the first date of the A Cycle and shall continue to be invoiced by UNFI at promotional prices through the end of the B Cycle. After the end

**NOTE:** A request for confidential treatment has been made with respect to the portions of the following document that are marked [\*CONFIDENTIAL\*]. The redacted portions have been filed separately with the SEC.

**WHEREAS**, the parties have entered into this Agreement as of October 30, 2015 with the intent to be bound as of the Effective Date.

**Whole Foods Market Distribution, Inc., a Delaware corporation**

By:   /s/ Walter Robb

Walter Robb, Co-Chief Executive Officer

**United Natural Foods, Inc.**

By:   /s/ Steven L. Spinner

Steven L. Spinner, President and Chief Executive Officer