United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| SHOSHA KELLMAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WFM PRIVATE LABEL, L.P., et al.,<br><br>Defendants. | Case No. 17-cv-06584-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF No. 93 |

**INTRODUCTION**

Plaintiff Shosha Kellman, a California resident, brings her operative Fourth Amended Complaint against four corporate entities associated with the Whole Foods supermarket chain. Ms. Kellman alleges that Whole Foods not only is a retailer but also is a manufacturer of its own household and body-care products, which it sells at its stores under private labels such as the "365 Everyday Value" and "Whole Foods Market" product lines (such products, "private-label products").[1] Ms. Kellman alleges that Whole Foods has been mislabeling certain of its private-

---

[1] Fourth Amend. Compl. ("4AC") – ECF No. 91 at 2 (¶ 5). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 17-cv-06584-LB

label household and body-care products as "hypoallergenic" despite the fact that they actually contain known allergens.[2]

Ms. Kellman names as defendants (1) WFM Private Label, L.P. ("WFM Private Label"), which she alleges is the entity that is "responsible" for Whole Foods's private-label products,[3] (2) Whole Foods Market California, Inc. ("WFM California"), which she alleges operates the Whole Foods stores in certain California regions, including northern California,[4] (3) Whole Foods Market Services, Inc. ("WFM Services"), which she alleges is the marketing arm of Whole Foods and accomplishes the national design, development, advertising, and marketing of Whole Foods's private-label products,[5] and (4) Whole Foods Market Distribution, Inc. ("WFM Distribution"), which she alleges is the exclusive distributor of Whole Foods's private-label products in certain California regions.[6] Ms. Kellman defines two putative classes, one of all U.S. residents who purchased the private-label household and body-care products at issue (the "Putative Nationwide Class") and one of all California residents who bought these products (the "Putative California Class.").[7] WFM Services and WFM Distribution move to dismiss the claims against them for lack of personal jurisdiction. All four defendants move to dismiss Ms. Kellman's Putative Nationwide Class claims.

The court allowed Ms. Kellman to take jurisdictional discovery of WFM Services and WFM Distribution.[8] The court held a hearing on the defendants' motion to dismiss. The court now grants in part and denies the defendants' motion. The court (1) denies the motion with respect to WFM Services, (2) grants the motion with respect to WFM Distribution, and (3) denies the motion with respect to the Putative Nationwide Class claims.

---

[2] *Id.* at 2–5 (¶¶ 1–26), 11–27 (¶¶ 70–176), 30–37 (¶¶ 192–235).

[3] *Id.* at 7 (¶ 40).

[4] *Id.* (¶ 38).

[5] *Id.* at 9 (¶¶ 53–54).

[6] *Id.* at 8 (¶ 39).

[7] *Id.* at 27–28 (¶¶ 177–78).

[8] Order – ECF No. 61.

ORDER – No. 17-cv-06584-LB    2

**STATEMENT**

This case concerns certain of Whole Foods's private-label household and body-care products (including those sold under the "365 Everyday Value" and the "Whole Foods Market" product lines).[9] Many of Whole Foods's private-label products are labeled as "hypoallergenic."[10] Plaintiff Shosha Kellman alleges that a number of these products labeled "hypoallergenic" actually contain known allergens, skin irritants, eye irritants, and other hazardous chemicals.

The court discussed in more detail Ms. Kellman's allegations about Whole Foods's private-label products (as pleaded in her Second Amended Complaint, which are similar to the allegations she pleads in her Fourth Amended Complaint) in its prior order. *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1041–43 (N.D. Cal. 2018).[11] The court focuses here on the facts relevant to personal jurisdiction over WFM Services and WFM Distribution.

As of September 24, 2017, there were 84 Whole Foods stores in California (the most of any state) out of a total of 448 stores in the United States.[12]

**1. WFM Services**

WFM Services is a Texas corporation with its principal place of business in Austin, Texas.[13] It works as the administrative arm of the Whole Foods family of companies, providing accounting, legal, and other administrative services to the Whole Foods operating entities.[14]

---

[9] 4AC – ECF No. 91 at 2 (¶ 5).

[10] *Id.* (¶ 6).

[11] Order – ECF No. 45.

[12] Whole Foods Mkt., Inc., Form 10-K at 6 (2017), *available at* https://www.sec.gov/Archives/edgar/data/865436/000086543617000238/wfm10k2017.htm (last visited Mar. 29, 2019). By way of comparison, the states with the next highest number of Whole Foods stores were Texas and Massachusetts, with 32 and 31 stores, respectively. *Id.*

[13] Warren Decl. – ECF No. 36 at 4 (¶ 20).

[14] *Id.* (¶ 21).

### 1.1 Development, Production, and Sale of Private-Label Products

Ms. Kellman asserts that WFM Services directs the development, production, and sale of Whole Foods's private-label products. Ms. Kellman submits a sworn declaration filed in 2006 by a WFM Services Private Label Customer Service and Sales Support Team Leader in a lawsuit pending against Whole Foods Market, Inc. ("WFMI"), the parent Whole Foods holding company, in the Southern District of New York. In the declaration, the WFM Services representative attested:

> The development, production and sale of the 365 EVERYDAY VALUE and 365 ORGANIC EVERYDAY VALUE line of products is directed from Whole Foods Market Services, Inc.'s offices in Austin Texas. All national marketing and advertising for the 365 EVERYDAY VALUE and 365 ORGANIC EVERYDAY VALUE line of products is directed from Whole Foods Market Services, Inc.'s offices in Austin, Texas. All decisions regarding the particular products to be offered under the 365 EVERYDAY VALUE and 365 ORGANIC EVERYDAY VALUE markets, and the label design for those products, are made at Whole Foods Market Services, Inc.'s offices in Austin, Texas.[15]

On the basis of the declaration, WFMI moved to transfer that case to the Western District of Texas, arguing that "[d]ecisions relating to the design, development, advertising, and marketing of [the Whole Foods Market 365 Everyday Value® and 365 Organic Everyday Value®] private label lines of products are controlled by employees of Whole Foods Market Services, Inc."[16] The Southern District of New York cited the WFM Services representative's declaration and granted WFMI's motion to transfer venue. *Frame v. Whole Foods Mkt., Inc.*, No. 06 Civ. 7058(DAB), 2007 WL 2815613, at *3 (S.D.N.Y. Sept. 24, 2007).

---

[15] Declaration in Support of Defendant's Motion to Transfer Venue ¶ 4, *Frame v. Whole Foods Mkt., Inc.*, No. 1:06cv7058 (S.D.N.Y. Nov. 22, 2006), ECF No. 6 (attached as 4AC Ex. 3 – ECF No. 91-3 at 2 (¶ 4)) ("*Frame* Decl.").

[16] Defendant's Memorandum of Law in Support of Motion to Transfer This Action from the Southern District of New York to the Western District of Texas Pursuant to 28 U.S.C. § 1404(a) at 2, No. 1:06cv7058 (S.D.N.Y. Nov. 22, 2006), ECF No. 4 (attached as 4AC Ex. 4 – ECF No 91-4 at 4).

For their part, the defendants submit a sworn declaration filed in 2018 in this case by the Senior Global Litigation Counsel for WFM Services, who stated, "WFM Services does not design, manufacture, distribute or sell any goods, including household or body care products, either to Whole Foods Market stores or any other person or entity."[17] The declaration acknowledges that "WFM Services has some responsibility for the marketing and advertising of Whole Foods' private label products" but states that "[t]he WFM Services' employees responsible for marketing and advertising reside in Texas and have their offices in Austin."[18]

At a Rule 30(b)(6) deposition taken pursuant to jurisdictional discovery, WFM Services stated that it is responsible for marketing Whole Foods's overall brand.[19] WFM Services and/or WFM Private Label also maintain an "Exclusive Brands" team at Whole Foods's headquarters in Austin.[20] The Exclusive Brands team has input into decisions regarding what products Whole Foods sells under its own label, in connection with a working group with Whole Foods regional teams.[21] WFM Services maintains a list of ingredients that should not be used in Whole Foods products.[22] The individual third-party vendors that manufacture the products sold as Whole Foods private-label products are responsible for the content of, and the labeling of, ingredients in Whole Foods's private-label products.[23] The third-party vendors are responsible for creating the labels

---

[17] Warren Decl. – ECF No. 36 at 4 (¶ 27).

[18] *Id.* (¶ 28).

[19] Rule 30(b)(6) Dep. – ECF No. 86-9 at 6 (p. 17).

[20] *Id.* at 12–13 (pp. 44–45), 14–15 (pp. 52–53). The Rule 30(b)(6) deponent was unsure whether Exclusive Brand team members are employees of WFM Services, WFM Private Label, or both. *Id.* at 12–13 (pp. 44–45).

[21] *Id.* at 6 (p. 20).

[22] *Id.* at 5 (p. 15).

[23] *Id.* at 7 (p. 22).

ORDER – No. 17-cv-06584-LB  5

that go on the products.[24] The Exclusive Brands team has input with respect to some products, but the vendor is the one that ultimately makes the decision of what goes on the label.[25]

### 1.2 Whole Foods's Website

WFM Services is responsible for the content and design of Whole Foods's website, https://www.wholefoodsmarket.com, although individual stores have some control over and authority to change the content of their individual store webpages.[26] The WFM Services employees responsible for working on and maintaining the Whole Foods website reside in Texas and have their offices in Austin.[27]

Whole Foods's website has a "store locator" that allows customers (including California customers) to locate the Whole Foods store nearest to them and confirm their store hours.[28] Additionally, the Whole Foods website shows customers (including California customers) "local sales" specific to their local Whole Foods stores (including California stores).[29] Ms. Kellman states that she used the Whole Foods website's online store locator to help her find the Whole Food store nearest to her and to confirm the store's hours.[30]

Customers who use Whole Foods's website and select California Whole Foods stores as their preferred location can see marketing for the Whole Foods private-label products at issue in this

---

[24] *Id.* at 6 (p. 19).

[25] *Id.* at 6 (p. 19), 8 (pp. 25–26).

[26] Warren Decl. – ECF No. 36 at 5 (¶ 29).

[27] *Id.*

[28] Pl. Opp'n Ex. I – ECF No. 95-10 at 2–3.

[29] Pls. Opp'n Ex. H – ECF No. 95-9 at 2–5.

[30] Kellman Decl. – ECF No. 95-16 at 1 (¶ 4).

action.³¹ For example, a customer who sets Whole Foods's San Francisco store at 2001 Market Street can see marketing for Whole Foods's private-label maximum-moisture body pump.³²



Ms. Kellman states that she reviewed on Whole Foods's website the descriptions of the private-label products at issue in this action.³³

The defendants assert that customers cannot directly purchase Whole Foods private-label household, body-care, or baby-care products through the Whole Foods website.³⁴ By contrast, Ms. Kellman asserts that the Whole Foods home page has a large "ORDER ONLINE" button that

---

³¹ Pl. Opp'n Ex. G – ECF No. 95-8 at 2.

³² *Id.*

³³ Kellman Decl. – ECF No. 95-16 at 1 (¶ 3).

³⁴ *Id.* (¶ 30).

takes customers to a page where they can click to buy products through two intermediaries: the California-based company Instacart or Whole Foods's parent company Amazon.com.[35]



---

[35] Pl. Opp'n Ex. A – ECF No. 95-2 at 2; Pl. Opp'n Ex. C – ECF No. 95-4 at 5 (showing that Instacart is headquartered in San Francisco).

Clicking on the Instacart button takes customers to a webpage (that bears a Whole Foods URL, https://delivery.wholefoodsmarket.com) where customers can search for and buy the Whole Foods private-label products at issue in this action.[36]



Clicking on the Amazon button takes customers to a Whole Foods page on Amazon, where Whole Foods places online ads and deals for customers seeking delivery in Northern California,

---

[36] Pl. Opp'n Ex. D. – ECF No. 95-5 at 2.

1  and where customers can search for and buy the Whole Foods private-label products at issue in
2  this action.[37]

### 2. WFM Distribution

WFM Distribution is a Delaware corporation with its principal place of business in Austin, Texas.[38] WFM Distribution enters into and manages distribution agreements on behalf of Whole Foods regional operating entities, including agreements relating to the distribution of relating to the distribution of some "365 Everyday Value"- and "Whole Foods"-branded private-label products.[39]

Specifically, on October 30, 2015, WFM Distribution entered into an Agreement for Distribution of Products ("Agreement") with a corporation called United Natural Foods, Inc. ("UNFI") to sell and distribute certain private-label products, including some "365 Everyday Value"- and "Whole Foods"-branded private-label products, to individual Whole Foods stores or regional operating entities.[40] The Agreement recites how "WFM [Distribution] and its affiliates and subsidiaries have WFM Locations in a number of separate regions which currently include the Florida Region, Mid-Atlantic Region, Mid-West Region, Pacific Northwest Region, Northern Atlantic Region, Northeast Region, Northern California Region, Rocky Mountain Region, South Region, Southern Pacific Region, and the Southwest Region."[41] Among other things, the Agreement requires UNFI to purchase the private-label products that WFM Distribution requests

---

[37] Pl. Opp'n Ex. E – ECF No. 95-5 at 2–7.
[38] Garraway Decl. – ECF No. 53 at 2 (¶ 2).
[39] *Id.* (¶ 3).
[40] *Id.* (¶ 8).
[41] Agreement – ECF No. 91-5 at 2 (Recitals ¶ A).

1   and to stock them at UNFI distribution centers that WFM designates.[42] The Agreement envisions

2   that individual Whole Foods stores will then purchase private-label products from UNFI.[43]

3   Whole Foods stores do not purchase private-label products exclusively from UNFI — some

4   products go directly from third-party vendors to Whole Foods stores.[44]

## ANALYSIS

### 1. Personal Jurisdiction

#### 1.1 Governing Law

"In diversity cases such as this one, federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Kellman v. Whole Foods Mkt., Inc.*, 313 F. Supp. 3d 1031, 1043 (N.D. Cal. 2018) (internal quotation markets and brackets omitted) (quoting *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015)). "Because California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution, a court's inquiry centers on whether exercising jurisdiction comports with due process." *Id.* (internal quotation markets and brackets omitted) (quoting *Picot*, 780 F.3d at 1211). "Due process requires that the defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 1043–44 (internal quotation markets omitted) (quoting *Picot*, 780 F.3d at 1211).

---

[42] *Id.* at 8 (¶ 6(a)) ("UNFI will purchase and stock the [private-label products] requested by WFM [Distribution] from time in the UNFI [distribution centers] designated by WFM [Distribution].").

The Agreement does not state that WFM Distribution is the party selling the private-label products to UNFI (it states that UNFI must purchase and stock private-label products at WFM Distribution's request but not that WFM Distribution is the seller).

[43] *Id.* at 2 (Recitals ¶ C) ("The parties desire to . . . enter into this Agreement to set forth the terms upon which UNFI will continue to sell and distribute to WFM Locations and WFM Locations will continue to purchase certain goods and services from UNFI."); *accord* Garroway Decl. – ECF No. 53 at 3 (¶ 8) ("In accordance with the Agreement, Whole Foods Market retail stores or regional operating entities submit purchase orders directly to UNFI for specific private label products and UNFI sells and distributes those products directly to the stores or regional entity.").

[44] Rule 30(b)(6) Dep. – ECF No. 86-9 at 19 (p. 69) ("Q. Okay. And when they make that decision to purchase those Private Label products, who do they -- who do they pay for those products? A. UNFI, mostly; not all of them. They have some that go direct from the vendor, as I understand it. So either the vendor or whoever the distributor is. In most cases, UNFI.").

"There are two types of personal jurisdiction: general and specific." *Id.* at 1044 (citing *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017)). Ms. Kellman argues only that WFM Services and WFM Distribution are subject to specific jurisdiction; she does not claim that either is subject to general jurisdiction.[45]

"In order for a state court to exercise specific jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Id.* at 1044 (emphasis in original, internal quotation marks omitted) (quoting *Bristol-Myers*, 137 S. Ct. at 1780). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotation marks omitted) (quoting *Bristol-Myers*, 137 S. Ct. at 1780). "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted) (quoting *Bristol-Myers*, 137 S. Ct. at 1780). The Ninth Circuit employs a three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 1044–45 (quoting *Picot*, 780 F.3d at 1211). "The plaintiff has the burden of proving the first two prongs." *Id.* at 1045 (internal quotation marks omitted) (quoting *Picot*, 780 F.3d at 1211–12). "If she does so, the burden shifts to the defendant to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable.'" *Id.* (internal brackets and some internal quotation marks omitted) (quoting *Picot*, 780 F.3d at 1212).

---

[45] *See* Pl. Opp'n – ECF No. 95 at 19–20.

ORDER – No. 17-cv-06584-LB    12

With respect to the first prong, courts generally apply a "purposeful availment" analysis in suits sounding in contract and a "purposeful direction" analysis in suits sounding in tort. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Courts have held that product false-labeling and breach-of-warranty claims sound primarily in tort and thus apply a purposeful-direction analysis. *Podobedov v. Living Essentials, LLC*, No. CV 11-6408 PSG (PLAx), 2012 WL 2513465, at *3 (C.D. Cal. Mar. 22, 2012) (applying purposeful-direction analysis to claims that "5-Hour Energy" beverages do not in fact provide five hours of energy); *see also Buelow v. Plaza Motors of Brooklyn, Inc.*, No. 2:16-cv-02592-KJM-AC, 2017 WL 2813179, at *4 (E.D. Cal. June 29, 2017) ("'A breach of warranty action may sound in tort.'") (internal brackets omitted) (quoting *Plant Food Co-op v. Wolfkill Feed & Fertilizer Corp.*, 633 F.2d 155, 160 (9th Cir. 1980)). "A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803 (citing cases). To determine purposeful direction, courts apply a three-part test, which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).[46]

"The parties may submit, and the court may consider, declarations and other evidence outside the pleadings in determining whether it has personal jurisdiction." *Kellman*, 313 F. Supp. 3d at 1042 (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (internal quotation marks omitted) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir.

---

[46] With respect to the separate purposeful-availment test, the Ninth Circuit has also held that "purposeful availment is satisfied even by a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state." *Schwarzenegger*, 374 F.3d at 803 (some internal quotation marks omitted) (quoting *Dole Food*, 303 F.3d at 1111).

2015)). "Uncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* at 1042–43 (internal quotation marks omitted) (quoting *Ranza*, 793 F.3d at 1068). "But courts may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Id.* (internal quotation marks omitted) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) and citing *Ranza*, 793 F.3d at 1068).

### 1.2 Application

#### 1.2.1 WFM Services

On the defendants' previous motion to dismiss Ms. Kellman's Second Amended Complaint, the court credited the defendants' declaration that WFM Services did not design the private-label products and did not sell them in California through its website because Ms. Kellman did not contradict the declaration except by her unsworn allegations. *Kellman*, 313 F. Supp. 3d at 1045–46. This time, Ms. Kellman offers evidence to support her allegations that WFM Services designs the private-label products at issue in this action (including their allegedly misleading labels), advertises and markets the products, and offers them for sale in California through its website.

##### 1.2.1.1 Purposeful direction

Ms. Kellman submits a sworn declaration by a WFM Services representative from the earlier *Frame* case. WFM Services's parent WFMI used that declaration to convince a federal court that "[a]ll decisions regarding the particular products to be offered under the 365 EVERYDAY VALUE and 365 ORGANIC EVERY VALUE marks, and the label design for those products, are made at Whole Foods Market Services, Inc.'s offices in Austin, Texas." *Frame*, 2007 WL 2815613, at *3.[47] Ms. Kellman also points to WFM Services's Rule 30(b)(6) deposition testimony

---

[47] The *Frame* declaration also states that WFM Services directs all national marketing and advertising for Whole Foods's "365 Everyday Value" line of products. *Frame* Decl. – ECF No. 91-3 at 2 (¶ 4).

The defendants do not try to distinguish the *Frame* declaration (e.g., by submitting a sworn declaration stating that WFM Services's role has changed in the time between that declaration and now). Instead, they ignore it. *See* Defs. Reply – ECF No. 100 at 12 (arguing only that WFM Services is not the primary designer, developer, or marketer of Whole Foods's private-label products and ignoring the *Frame* declaration). At the hearing, the defendants argued that the *Frame* declaration was contradicted by their more recent Rule 30(b)(6) testimony that the Whole Foods "Exclusive Brands"

ORDER – No. 17-cv-06584-LB  14

that it maintains an "Exclusive Brands" team that has input into what private-label products Whole Foods sells and into the labels that go on the products.[48] Ms. Kellman additionally submits evidence that the website WFM Services maintains for Whole Foods directs California customers to Whole Foods's California stores, shows California customers listings for Whole Foods's private-label products (including the products at issue in this action), and allows California customers to purchase those products online (by directing customers to pages maintained by Instacart or Amazon that process online orders).[49] Ms. Kellman's evidence satisfies her burden of showing that WFM Services has purposefully directed conduct toward the forum state.

First, if WFM Services makes all decisions about the "365 Everyday Value" products that Whole Foods offers for sale, it presumptively made the decision to offer for sale the "365 Everyday Value" products at issue in this action. It also presumptively made the decision to label them and market them as "hypoallergenic" despite that label allegedly being false and misleading. These are intentional acts. *Cf. AirWair Int'l, Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014) (assisting in marketing products constitutes intentional act); *Bruni Glass Packaging, Inc. v. Copain Wine Cellars, LLC*, No. C 09-02398 CW, 2010 WL 1038231, at *2 (N.D. Cal. Mar. 19, 2010) (designing products and offering them for sale constitute intentional acts).

Second, WFM Services intended that the products it decided to offer for sale and decided to label and market as "hypoallergenic" would be sold in California. WFM Services actually or constructively knows that nearly 20% of Whole Foods's U.S. stores are in California (more than twice as many stores as in any other state). Additionally, WFM Services is responsible for the

---

team has responsibility for private-label products and that the Exclusive Brands team is part of WFM Private Label, not WFM Services. But the defendants' Rule 30(b)(6) deponent actually could not say whether the Exclusive Brands team is part of WFM Private Label, WFM Services, or both. Rule 30(b)(6) Dep. – ECF No. 86-9 at 12–13 (pp. 44–45). In any event, even if the defendants submitted evidence that WFM Services did not design, develop, or market the private-label products at issue in this action, that would at most raise a conflict with Ms. Kellman's evidence — and at this juncture, conflicts in the evidence must be resolved in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800; *accord Kellman*, 313 F. Supp. 3d at 1045.

[48] Rule 30(b)(6) Dep. – ECF No. 86-9 at 6 (p. 19), 8 (pp. 25–26), 12 (p. 44), 14–15 (pp. 52–53).

[49] Pl. Opp'n Ex. A – ECF No. 95-2 at 2; Pl. Opp'n Ex. D. – ECF No. 95-5 at 2; Pl. Opp'n Ex. E – ECF No. 95-5 at 2–7; Pl. Opp'n Ex. G – ECF No. 95-8 at 2; Pls. Opp'n Ex. H – ECF No. 95-9 at 2–5; Pl. Opp'n Ex. I – ECF No. 95-10 at 2–3.

content and the design of Whole Foods's website and actively or constructively knows that the website directs California customers to Whole Foods's California stores, show California customers local sales specific to their California stores, shows California customers listings for Whole Foods's private-label products (including the products at issue in this action), and allows California customers to purchase those products online. It has aimed its conduct at the forum state. *Cf. Mavrix*, 647 F.3d at 1230 (fact that defendant "knows — either actively or constructively — about its California user base, and [] exploits that base for commercial gain" and "anticipated, desired, and achieved a substantial California viewer base" supports finding that defendant expressly aimed its conduct at California); *id.* at 1231 ("[W]here, as here, a website with national viewership and scope appeals to, and profits from, an audience in a particular state, the site's operators can be said to have 'expressly aimed' at that state."); *Lindora, LLC v. Isagenix Int'l, LLC*, 198 F. Supp. 3d 1127, 1139 (S.D. Cal. 2016) (fact that defendant sells more products to California customers than in any other state supports finding that the defendant expressly aimed its conduct at California).[50]

Third, for the same reason, WFM Services knew that harm (if any) from Whole Foods's private-label products, which are sold in California, is likely to be suffered in the forum state. *See*

---

[50] The defendants emphasize the fact that WFM Services itself does not process online purchases of private-label products and that the purchases are instead processed by Instacart or Amazon. Defs. Reply – ECF No. 100 at 9–10. But they do not explain sufficiently why this distinction makes a difference. *See id.* (citing no cases). That a defendant marketed or sold products through a retailer such as Amazon does not defeat a finding of express aiming of conduct to the forum state. *Mysfyt, Inc. v. Lum*, No. 4:16-cv-03813-KAW, 2016 WL 6962954, at *3 (N.D. Cal. Nov. 29, 2016) (holding that defendant who sold products through Amazon and shipped 20% of his products to California had expressly aimed his conduct at California). The defendants also argue that WFM Services's operation of Whole Foods's website is insufficient to give rise to personal jurisdiction. Defs. Mot – ECF No. 93 at 16; Defs. Reply – ECF No. 100 at 10–11. But courts use a sliding-scale approach in assessing websites in a purposeful-availment or purposeful-direction inquiry. *Am. Auto. Ass'n, Inc. v. Darba Enters. Inc.*, No. C 09-00510-SI, 2009 WL 1066506, at *4 (N.D. Cal. Apr. 21, 2009) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)). While a wholly passive website that does not provide any means for purchasing any goods might be insufficient to give rise to personal jurisdiction, *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007), that does not render Whole Foods's more interactive website irrelevant in assessing whether WFM Services purposefully directed its conduct to the forum state, *cf., e.g., Am. Auto. Ass'n*, 2009 WL 1066506, at *4–5.

*generally Schwarzenegger*, 374 F.3d at 803 (citing "the distribution in the forum state of goods originating elsewhere" as example of purposeful direction).

The first element of the specific-personal-jurisdiction test is satisfied here.

#### 1.2.1.2 Arising out of the defendant's forum-related activities

To determine whether a plaintiff's claim arises out of the defendant's forum-related activities, courts use a "but for" causation analysis. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). WFM Services's forum-related activities — namely, its presumptive decision to offer for sale the products at issue in this case and to label and market them as "hypoallergenic," knowing that they would be sold at Whole Foods stores to customers in California like Ms. Kellman — are the but-for cause of Ms. Kellman's claims. *Cf. Podobedov*, 2012 WL 2513465, at *6.

The second element of the specific-personal-jurisdiction test is satisfied here.

#### 1.2.1.3 Comporting with fair play and substantial justice

If the plaintiff establishes the first two prongs of the specific-personal-jurisdiction test, the burden shifts to the defendant to show that the exercise of jurisdiction would not be reasonable. *Kellman*, 313 F. Supp. 3d at 1045 (citing *Picot*, 780 F.3d at 1212). Courts consider seven factors in determining if exercising personal jurisdiction is reasonable: "(1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum." *Bancroft & Masters*, 223 F.3d at 1088 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). It is the defendant's burden to raise and address these factors in the first instance. *Id.* at 1089.

WFM Services does not address the seven factors listed above and does not otherwise make a meaningful argument that jurisdiction here would be unreasonable. WFM Services thus has not met its burden of showing that the exercise of personal jurisdiction would not comport with fair play and substantial justice. *Cf. id.* (holding that "the defendant [must] demonstrate a 'compelling

case,' focused on the seven specific factors listed above, in order to establish unreasonableness" and denying defendant's claim of unreasonableness where defendant failed to do so); *accord Bruni*, 2010 WL 1038231, at *3 (same).

The third element of the specific-personal-jurisdiction test is satisfied here.

\* \* \*

As all three elements of the specific-personal-jurisdiction test have been satisfied with respect to WFM Services, the court denies WFM Services's motion to dismiss.

### 1.2.2 WFM Distribution

The analysis for WFM Distribution is different. Ms. Kellman has not satisfied the second element of the specific-personal-jurisdiction test, namely, that her claim arises out of or relates to WFM Distribution's alleged forum-related activities. As discussed above, courts use a "but for" causation analysis. *Bancroft & Masters*, 223 F.3d at 1088. Ms. Kellman does not plead that but for any forum-related activity by WFM Distribution, her claims would not have arisen.

WFM Distribution has submitted a sworn declaration that it is not involved in distributing private-label products to Whole Foods stores.[51] While its Agreement with UNFI requires UNFI to purchase and stock private-label products at its request and stock the products at UNFI distribution centers (which are not alleged to be located in California),[52] Whole Foods stores or regional operating entities (not WFM Distribution) are the ones that submit purchase orders for the private-label products, and UNFI ships those products directly to the stores or regional entities.[53] Additionally, WFM Distribution's Rule 30(b)(6) testimony indicates that Whole Foods stores can purchase private-label products directly from vendors, without going through either WFM

---

[51] Garraway Decl. – ECF No. 53 at 3 (¶ 8).
[52] Agreement – ECF No. 91-5 at 8 (¶ 6(a)).
[53] Garraway Decl. – ECF No. 53 at 3 (¶ 8).

1  Distribution or UNFI.[54] Ms. Kellman thus has not established that any forum-related activity by
2  WFM Distribution was the but-for cause of her claims.[55]

3  As Ms. Kellman has not satisfied the second element of the specific-personal-jurisdiction test
4  with respect to WFM Distribution, the court grants WFM Distribution's motion to dismiss.[56]

### 2. Putative Nationwide Class Claims

Ms. Kellman brings common-law claims for breach of express warranty and unjust enrichment and statutory claims under California's Consumers Legal Remedies Act, False Advertising Law, and Unfair Competition Law. The defendants argue that the court should dismiss Ms. Kellman's Putative Nationwide Class claims because, so the defendants argue, California common law and statutory law differs from the law of other states and each state has an interest in regulating commerce within its own borders.[57] In support of their argument, the defendants cite *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), in which the Ninth Circuit heard an appeal from a class-certification order and decertified a nationwide class because "variances in state law overwhelm common issues and preclude predominance for a single nationwide class." *Id.* at 596.

Numerous courts have rejected the argument that *Mazza* (which did not address a motion to dismiss) requires dismissal of nationwide-class claims at the pleading stage, particularly where, as

---

[54] Rule 30(b)(6) Dep. – ECF No. 86-9 at 19 (p. 69).

[55] Ms. Kellman generally alleges that WFM Distribution "distributes or causes the distribution of all [Whole Foods]'s private label products throughout the United States, including and specifically to retail stores in the State of California" and that "WFM Distribution is the exclusive distributor of [Whole Foods]'s private label products in certain California regions." 4 AC – ECF No. 91 at 6 (¶ 31), 7 (¶ 39). This does not establish that any forum-related activity by WFM Distribution is the but-for cause of her injuries. First, these allegations are unsworn and thus cannot overcome WFM Distribution's sworn declaration and testimony. *Kellman*, 313 F. Supp. 3d at 1045 (citing *Mavrix*, 647 F.3d at 1223). Second, they do not allege that "but for" any forum-related activity by WFM Distribution, Whole Foods stores in California would not have purchased the private-label products at issue (e.g., directly from vendors) and sold them to California customers like Ms. Kellman, thereby causing her alleged injuries or giving rise to her claims.

[56] Because Ms. Kellman has not satisfied the second element of the specific-personal-jurisdiction test, it is unnecessary to address whether she has satisfied the first or third elements.

[57] Defs. Mot. – ECF No. 93 at 17–18.

ORDER – No. 17-cv-06584-LB         19

here, the defendants do not engage in a full analysis of the differences between various states' laws or of various states' competing interests. *See, e.g.*, *Hofmann v. Fifth Generation, Inc.*, No. 14-cv-2569 JM (JLB), 2015 WL 5440330, at *10 (S.D. Cal. Mar. 18, 2015); *Czuchaj v Conair Corp.*, No. 13-CV-1901-BEN (RBB), 2014 WL 1664235, at *9 (S.D. Cal. Apr. 18, 2014); *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at *13 (N.D. Cal. Jan. 15, 2014). The court similarly finds the defendants' motion here to dismiss the Putative Nationwide Class claims premature at the pleading stage. The defendants may re-raise their arguments at the class-certification stage.

## CONCLUSION

The court grants in part and denies in part the defendants' motion to dismiss. The court (1) denies the motion with respect to WFM Services, (2) grants the motion with respect to WFM Distribution, and (3) denies the motion with respect to the Putative Nationwide Class claims.

The dismissal of WFM Distribution is without prejudice. If Ms. Kellman wants to reassert claims against WFM Distribution, she may file an amended complaint within 14 days of the date of this order. If she files an amended complaint, she must also file a blackline of her new amended complaint against her Fourth Amended Complaint as an attachment.[58]

**IT IS SO ORDERED.**

Dated: March 29, 2019

LAUREL BEELER
United States Magistrate Judge

---

[58] The court grants leave to amend only because this is the first dismissal of WFM Distribution. Given that the court will not order more jurisdictional discovery and given that Ms. Kellman likely cannot plead more jurisdictional facts, the court wonders — as it did at the hearing — whether it is time to let the pleadings settle and move forward with the case.