Pages 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Laurel Beeler, Magistrate Judge

| | | |
|---|---|---|
| SOSHA KELLMAN, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| VS. | ) ) | NO. C 17-06584 LB |
| WFM PRIVATE LABEL, L.P., WHOLE FOODS MARKET CALIFORNIA, INC., WHOLE FOODS MARKET SERVICES, INC. and WHOLE FOODS MARKET DISTRIBUTION, INC., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

San Francisco, California
Thursday, February 4, 2021


**TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING OF
REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**TIME 9:48 A.M. - 10:17 A.M. = 29 MINUTES**

**APPEARANCES VIA ZOOM:**

For Plaintiff:
                    FRANCIS MAILMAN SOUMILAS, P.C.
                    1600 Market Street, Suite 2510
                    Philadelphia, Pennsylvania 19103
              BY:  **JAMES A. FRANCIS, ATTORNEY AT LAW**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**


Transcribed By:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
                 CSR No. 7445, Official U.S. Reporter

**APPEARANCES**:  (CONTINUED)

For Plaintiff:

                        THE GOLAN FIRM
                        529 - 14th Street, N.W.
                        Suite 914
                        Washington, D.C. 20045
                **BY:**  **YVETTE Y. GOLAN, ATTORNEY AT LAW**

For Defendants:

                        BLAXTER BLACKMAN
                        601 California Street
                        San Francisco, California 94108
                **BY:**  **J.T. WELLS BLAXTER, ATTORNEY AT LAW**
                      **BRIAN R. BLACKMAN, ATTORNEY AT LAW**

<u>**Thursday - February 4, 2021**</u>                              <u>**9:48 a.m.**</u>

**P R O C E E D I N G S**

---o0o---

**THE CLERK:**  Calling Civil Action 17-6584, Kellman, et al. versus Whole Foods Market, Inc., et al.

Counsel, can you please state your appearances.

**MS. GOLAN:**  Good morning.  This is Yve Golan, counsel for plaintiff.

**THE COURT:**  Good morning.

**MR. FRANCIS:**  James Francis, also counsel for plaintiff.

**MR. BLACKMAN:**  Good morning, Your Honor.  Brian Blackman on behalf of the defendants.

**MR. BLAXTER:**  Good morning, Your Honor.  Wells Blaxter for defendants.

**THE COURT:**  Okay.  Great.  So just pulling -- looking at my notes.

So here's -- here's my reaction to your letter brief. You know, I -- in employment cases, for example, I am pretty open to the plaintiff's approach because, you know, it's just -- it's just too much work, frankly, you know, with the redactions.  But in product cases, it's different.

And, you know, I'm -- I'm -- I'm sympathetic to, like, I can't understand things because you robbed me of the context, even if you're right that things are irrelevant.  But at the

1   same time, I -- you know, looking at what you've given me, I

2   don't see why you can't at least -- I know that you talked at

3   least three times.

4          So I don't mean -- you know, I remember thinking, when I

5   was a lawyer, I remember seeing Judge Larson do a discovery

6   dispute and he made the parties go out to the hallway.  And I

7   thought to myself, it's like meet and confer; meet and confer

8   till you're dead.  So I understand the sort of endless

9   meet-and-confer process seems like it's own special form of

10  hell.

11         But at the same time, I don't know why it's not reasonable

12  for the plaintiffs to say, as opposed to all redactions,

13  you know -- even if they're representative, why can't you --

14  you know, why can't you give me this stuff.  I don't know why

15  that's unreasonable.

16         And so I'm happy to talk with you about it, but I thought

17  that Wells Fargo -- or, sorry.  "Wells Fargo" -- Whole Foods.

18  "WF."  It's already a long day and it's not even 10 o'clock

19  yet.

20         I don't know why that's not a reasonable proposal as a way

21  of addressing this dispute, because I can't -- I can't really

22  tell that that's unreasonable from the information that you've

23  given to me.

24         So that's what I would like to propose.

25             **MS. GOLAN:**  Yes, Your Honor.  Something else I wanted

1    to mention as well as the context being lost.  There's -- some

2    of the redactions were over information that we specifically

3    requested.

4         So, for instance, concentrations of ingredients.  One of

5    our discovery requests asked for Whole Foods products that were

6    not labeled as hypoallergenic because we wanted to see there,

7    for instance, what was the pricing.  And we compare the pricing

8    of Whole Foods products labeled as hypoallergenic and

9    Whole Foods products not labeled as hypoallergenic.  And

10   Whole Foods's redactions -- Whole Foods just redacted every

11   product that's not in the complaint, saying that it's -- you

12   know, it's a different product.

13        And so --

14        **THE COURT:**  Okay.  So let's talk about the pricing

15   decision for non- -- so, Mr. Blackman, if that's you.  So

16   what -- you know, so the idea is the harm, you know, the price

17   premium that gets paid for hypoallergenic products is relevant

18   to the litigation.  And for, you know, similar but products not

19   branded hypoallergenic, why isn't that relevant?

20        You know, it's -- I mean, you might -- and since it's

21   already produce -- you know, you're obviously redacting it.  So

22   it doesn't seem that the production of it's particularly

23   burdensome.

24        And so what's the -- and there's not a sort of an

25   anticompetitive effect in the same way that there might be in

1    other kinds of, you know, products -- I don't know -- with a

2    different labeling that might be more attenuated.

3        But why isn't that a reasonable position from the

4    plaintiffs?

5            **MR. BLACKMAN:**  Thank you, Your Honor.

6        The idea that they want information on all products not

7    labeled hypoallergenic --

8            **THE COURT:**  Well, not all products.  Would it be all

9    products, or it would be --

10           **MR. BLACKMAN:**  That's what their request says.  Their

11   request says all products not labeled hypoallergenic.

12       And so the process that we used was to use the search

13   terms, which would limit some of that, but to also review the

14   documents to see if those products beared any relationship to

15   this case.

16       So, one, were they a product at issue in this case?  If

17   so, the information was turned over.

18       Two, does the product contain an ingredient that's at

19   issue in this case?  If it does, then we turned that

20   information over.

21       The ingredient issue is the issue that this Court used to

22   determine what were similar products and what were not similar

23   products at the demurrer stage.  And so we used that process to

24   determine what was relevant, what was responsive, and we turned

25   over all of that information.

1          The idea that we redacted information that they requested

2    because it went to the formulation, they called out a couple of

3    those documents to us, noting that they actually had that

4    information in other documents we had produced.  We found that

5    that was an error, and we corrected it.

6          That's why the approach that we were suggesting,

7    Your Honor, that let's talk about the documents that are

8    actually important to your case that you really believe that

9    you need the information for.

10         They just -- they're not taking the process of going

11   through those documents to determine what actually is and is

12   not relevant.  They could see a PowerPoint presentation, like

13   they called out in the letter, and say:  This is a document

14   that's important to us.  We think we need it for X and Y

15   reasons.  Here's the information that we think is missing from

16   here.  And we could have an intelligent conversation about it.

17         But instead of doing that, what we're left with is:  Just

18   unredact everything.

19         And Whole Foods does have privacy concerns as to products

20   that are not at issue here and as to information that is being

21   disclosed about products that have nothing to do with this

22   case, that are not applied to the skin.  They're not lotions or

23   shampoos or detergents.  But because --

24         **THE COURT:**  No, I hear you on that.  But I'm sorry.

25   I'm a little bit at a disadvantage.

1    I'm just pulling up my electronic file.  I'm actually

2  telecommuting today.  A lot of times I'm in the office.  So I'm

3  just pulling up some of my notes from the last time.  I usually

4  have this very organized approach where I can flip back to

5  things that we talked about before.

6    So I am not -- I'm not going to push you on -- so,

7  you know, all products is different than -- and I know that

8  similar products isn't necessarily a helpful restriction.

9    But the kinds of products that are labeled hypoallergenic,

10  it doesn't seem to me to be wrong if there's a request for it

11  for -- you know, and I can't tell because of the redactions,

12  but that seems reasonable, non-burdensome.

13    I don't think that there should be, you know, a large

14  fishing expedition in all products to be able to -- I don't

15  see -- that seems too attenuated.  And, you know, for the

16  reasons that you've identified, I don't think -- I'm not at

17  all -- I'm not -- I agree on that point.  But I -- but I --

18  just to the very specific, narrow -- and I don't know what the

19  requests are.

20    Maybe you guys should meet and -- I know you don't want to

21  meet and confer more from the plaintiff side when you've done

22  it three times already.  But I don't know why in the

23  marketing -- well, in the marketing context, because you're

24  looking at price premiums, why there can't be some something

25  settled upon that some of those redactions could be unredacted

1   if they're in the universe of products where it is relevant to

2   an analysis of the price premium.  Why is that wrong on my end,

3   from the defendants' standpoint?

4   　　　　MR. BLACKMAN:  Well, Your Honor, we turned over

5   documents related to products that are not at issue in this

6   case if they talked about hypoallergenic testing or if they

7   talked about hypoallergenic labeling or claims, whether or not

8   that was actually done.

9   　　So if they were considering hypoallergenic for the product

10  and ultimately decided not to use it, we turned over all of

11  that information.

12  　　That includes the --

13  　　　　THE COURT:  Right.  But the point -- I don't mean to

14  interrupt you.  That's fine, and that's fair, and that's good.

15  But the -- but what plaintiff's counsel just said is for the

16  non- -- the products that aren't labeled that way but that

17  their pricing -- you know, the price premium analysis -- I

18  mean, you know, I know there are consumer surveys and all of

19  that.

20  　　But if I buy the same Neutrogena skin care product and one

21  is -- or, you know, Walgreens -- I'm not using Whole Foods on

22  purpose -- but one is, you know, a facial moisturizer that's

23  branded hypoallergenic and one isn't and they otherwise are

24  similar products, why isn't that relevant?

25  　　　　MR. BLACKMAN:  Well, because -- we turned over that

1  information.  So the information --

2        **THE COURT:**  So they said that you didn't, but you're

3  saying you did.

4        **MR. BLACKMAN:**  The analysis that we used was:  Does it

5  have a similar ingredient?  Because that is --

6        **THE COURT:**  A similar ingredient without regard to

7  whether it's labeled hypoallergenic?

8        **MR. BLACKMAN:**  Exactly.

9        **THE COURT:**  Okay.  That's fine.  That's -- that's --

10  that's fine.  If you make that representation to me, then I

11  will say to the plaintiffs, from the plaintiff's perspective, I

12  have to accept it because you can identify areas where, in the

13  disclosures -- in the production, you know, on the redactions

14  and the -- in the log where you think that is not true and then

15  you can discuss it with Wells Fargo [sic].

16      But now I have a representation that that important

17  information was redacted, and so -- I'm sorry -- was produced,

18  and so -- and can someone just tell me, what's the volume at

19  issue here, just strictly from a volume perspective?  What are

20  you guys quarreling about?  I mean, I know what you're

21  quarreling about from an issue perspective, but what's the --

22  what's the --

23        **MS. GOLAN:**  So, so far, there have been about 1,500

24  documents produced.

25        **THE COURT:**  That's not terrible.  That's pretty --

1    pretty light.

2          **MS. GOLAN:**  And I don't have the number of those

3    documents as to how many have been redacted.

4          **THE COURT:**  So, again, I don't have -- you know, you

5    know better than I do.  I remember -- let's just -- of course I

6    remember my first, you know, 15,000 documents?  That's nothing,

7    or whatever.  So like, yeah, that's a gay moment.

8       I -- you know, as you -- in a world of terabytes where the

9    information that confronts you is sometimes shockingly

10   overwhelming, that's the sort of stuff you can plow through.

11      So, you know, and you guys know this, but, you know,

12   sometimes there are representative categories of things.  You

13   know, you seem to be redacting these issues in these three

14   places.  You may be doing it in 75 places, not just the four

15   that I've identified for you.

16      But it seems to me that you -- you know, and I -- and it

17   doesn't -- you know, when I look at -- I mean, when I see

18   how -- for the lack of context, that's different.  I mean,

19   I think that you guys at least need to talk about it.

20      And a good privilege log or you have the redactions.  A

21   good privilege log, plus redactions, if you really can't tell,

22   you know, you can give me a representative one.  If I can't

23   tell either, maybe that's -- you know, in a marketing material,

24   or whatever, in a deck, that's maybe something that we could

25   agree to pursuant to a protective order.  I don't know.

1          But I think at least, you know -- hopefully it's not

2     confusing and that you -- that you -- they really did redact

3     stuff that was, you know, completely unrelated and that they

4     have, in fact, produced information that is, you know, what I'm

5     going to call the similar product/different claims landscape,

6     which I do accept.

7          And then I just think that other than that, you know,

8     it's -- as I'm saying, I don't have your document productions

9     in front of me.  It's really hard to tell about context.  But

10    at least I think you guys need to sort of identify specifically

11    what you don't like.

12         And I'm not prepared in the products universe to just

13    wholesale say produce it unredacted, largely for the reasons

14    that Whole Foods has advanced.  So it's just not -- it's

15    just -- it's not what I do anyway.  So -- because it does

16    matter in a different way, in a different litigation with

17    different issues at stake where the -- you know, the protective

18    order has been sufficient to address the privacy.  I don't

19    think that's the case here.

20         So I don't know that I can do much more for you except to

21    say, you know, try to -- try to at least talk.  You know,

22    pick -- don't bite off more than you can chew in one meeting.

23    You know, pick some areas, five, whatever; talk about them.

24    From Whole Foods, see whether a -- like, how much does it

25    matter?  You know, what's the work involved in maintaining the

1    privacy, and do you really care all that much?  Especially in

2    marketing materials.

3         I mean, you make the call that you make the call.  And I

4    don't -- I know the pharmaceutical industry very well, and

5    that's because that's the work I used to do.  So I'm always

6    analogizing in a label case to my own experience doing labeling

7    cases in the pharmaceutical context.

8         A lot of times in that context, it really didn't matter.

9    It may matter to you, but often -- and it may matter more in

10   just a straight-up label context as opposed to the -- a

11   compositional context than it does in whatever, you know, the

12   marketing folks had by way of PowerPoint.

13        And so it's, you know, as Judge Jensen used to say to me:

14   How much do you really care?  And so -- and with that approach,

15   if you can see your way to producing stuff that you don't

16   really care about, especially marketing materials, pursuant to

17   a protective order, it might just be easier on everybody and

18   reduce the level of anxiety that attaches to redactions in a

19   straight-up, you know, labels, composition, comps for price

20   premiums.

21        It sounds like Whole Foods is doing what it's supposed to

22   be doing and is redacting wholly irrelevant things that don't

23   have anything to do with this litigation.  And as long as

24   that's happening, and that is the representation, which it is,

25   then I do accept what Whole Foods tells me about what it's

doing.

Is there anything else that you wanted to ask or say from the plaintiff side or the defense side that could be (inaudible)?

**MS. GOLAN:** Yeah. I think it's important to note that one of the reasons why we have such a small universe of documents -- only 1,500 documents -- is because we worked really hard on crafting search terms that would be good at getting responsive and relevant information. That's how they were able to take a universe of 41,000 documents and find only 1,500 really that were --

**THE COURT:** I appreciate that. That's an excellent point. So you guys did do a very good job. So that's great. That's a good observation.

**MS. GOLAN:** Well, and the other thing, take, for instance, Whole Foods' statement as to what products it considered to be similar. They looked at if there was a similar ingredient. I think that whether a product is similar or not depends on its function; a body wash versus a body wash, for instance.

One of the reasons why Rule 34 calls for the production of documents as they're kept in the ordinary course of business and, also, I think, one of the reasons why the ESI order in this case permits redactions only for privilege is to avoid this mini-trial like this, where plaintiffs are stuck saying:

1    We think it's relevant, but we don't know exactly what it is

2    because to us it's just a big, giant black box.

3         **THE COURT:**  I agree with you on the similar products

4    analysis.  I mean, I do.  I think that that's -- the body -- I

5    use the moisturizer example; you use the body wash example.

6         I don't -- another question I have is:  How many products

7    are at issue here?  Do you guys have a spreadsheet of how many

8    hypoallergenic products are at issue here?

9         You know that I did *Brown v. Hain Celestial*; right?  And

10   at some point we really -- we had the spreadsheet.  I mean, I

11   can't remember.  I'm just making it up.  But whatever it was,

12   we had the spreadsheet, and it was more than a hundred, and it

13   was -- and so I just wondered, have you gotten to that point

14   yet?

15        **MS. GOLAN:**  Your Honor, the number of products at

16   issue here are a bit more than a dozen.  But --

17        **THE COURT:**  Okay.  So it's not that many.  Okay.

18        **MS. GOLAN:**  But it's also sometimes difficult to tell

19   is this product within that list or outside of that list,

20   because product names are a little bit different sometimes.  So

21   is a shower gel the same thing as a -- is that included within

22   the bubble bath, for instance?  And so there's -- there's some

23   fuzziness there because --

24        **THE COURT:**  It's a dozen products.

25        So going back to Whole Foods, just -- you know, it

1   doesn't -- so the universe is pretty small, and it seems like

2   the comparables would be pretty small.  And I know you've

3   said -- you've represented that you have produced the

4   information regarding the comparables.

5        But it can't be that there's so many comparables -- and I

6   assume that comparables might be tied to a time period too;

7   right?  So it seems that the work -- it doesn't seem that the

8   burden on you is too much to produce information subject to a

9   protective order if -- and you may have already done it, and

10  I think you suggested to me that -- you said to me that you

11  did.  But what the plaintiffs are asking for is -- that's what

12  they're asking for.  And so there ought to be basically the

13  spreadsheet of the hypo- -- those were the hypoallergenic

14  claims, representations, and then the equivalent products.

15       And for those, I think that the redactions -- I don't see

16  any reason why those have to be redacted compositionally,

17  pricewise or otherwise.  I think it's just -- it's -- it's not

18  that big a deal; and it does seem to be -- you know, it is

19  relevant and it's not burdensome.  And you really did do a good

20  job narrowing the disputes.

21       And you may have already done this.  I mean, Mr. Blackman,

22  you sort of -- I think you told me that those are the things

23  you have produced.

24       **MR. BLACKMAN:**  Yes, Your Honor.  Well, we went -- when

25  we went through, we were looking for similar products, products

1    that were applied to the skin that had a hypoallergenic claim

2    or products that had similar ingredients.  We turned over that

3    information.

4         Our --

5              **THE COURT:**  Okay.  So if you did that, you did that.

6              **MR. BLACKMAN:**  What I'm hearing is that we haven't had

7    this conversation.

8         If they want to talk about a specific document or if they

9    want to talk about a specific product, then come to us and say:

10   Look, we think this shower gel is relevant or we didn't see any

11   documents about this.

12        We haven't had that conversation because they've never

13   come to us.  They just --

14             **THE COURT:**  Okay.  Well, so then we're having the

15   conversation now.  And so the -- of the dozen products which

16   are, you know, you said things applied to the skin -- and

17   I guess from the plaintiff's perspective, you would see,

18   well -- and, again, being familiar with Whole Foods as a

19   consumer and, you know -- I -- although I tend to shop for the

20   foods, not for the personal care products myself; but I'm,

21   you know, generally, familiar with the marketing.

22        And so it may be that, you know, the plaintiffs might say:

23   Well, we would have expected to see products like this on the

24   disclosures that are, you know, compositionally equivalent or a

25   product equivalent but without the claim.  And it may be, given

how Whole Foods has marketed its products, it may be that there
is nothing responsive.

    But it seems that you could at least -- if there are
things that you might have expected, Ms. Golan, that you
haven't seen, it seems that you guys can at least start with
having that conversation because you'll have (inaudible)
whoever the person who knows, you know, the Rule 30(b)(6)
person or whoever it is, the marketing person who kind of knows
the landscape.

    And that's -- you know, it may be somebody in mar- -- it
may be, you know, again -- again, from my experience in
pharmaceuticals, the marketing people are always a good place
to start because they always had, you know, all those -- they
had the spreadsheets; they had the slide decks; they had the
marketing materials; and you could pretty easily do a zero/one.

    And my guess is there may -- if, Mr. Blackman, you think
that you've done the disclosures, there may not be anything
else, but at least you can talk about it.  So that's one;
you know, what the plaintiffs expect that they didn't see.  And
so talk.

    And then the second thing is, if there are redactions that
you think -- and if there's a representation at that point,
then the -- that the -- that everything has been produced that
must be produced, then you're no longer looking at the
redactions through the eye of:  Stuff was kept from us, because

1    I can do -- I do accept the representations of counsel.  When

2    counsel tell -- when you tell me that you've done it, I accept

3    it.  I cannot -- I can do no more, unless there's some reason

4    for me not to have that.  And I have no reason in this case

5    with these lawyers.

6         So then the second thing is, then the issue becomes, of

7    the redactions you have, presumably marketing materials, these

8    are so redacted as to not give me context and they're

9    confusing.  And you at least need to have that conversation.

10        But I think you should stage it first with the products

11   conversation.  Make sure you've got the universe.  I bet you

12   do.  But if you don't, Mr. Blackman or Mr. Blaxter can go back

13   to the client, confirm.  I mean, I think they've -- you know,

14   since they did the document production, they identified the

15   documents, someone will know who can give the confirmation.

16   And -- and I think that's the best I can do on this record.

17        But I think that -- I think that -- I think you can get a

18   little bit more clarity from the plaintiff side, enough to

19   reduce your concern that you're not getting stuff that helps

20   you make the price premium analysis.

21        And then, after that, you guys can talk about what really

22   is confusing that you might want to look at.  You know, there

23   are ways around that.  You can, you know -- again, back to

24   Whole Foods, it's how much do you really care about some of the

25   redactions that they've identified as confusing because you've

1    addressed the landscape of insufficient disclosures.

2        Okay.  That's what I sort of have time for today, unless

3    there's anything else.  I've got another calendar coming up,

4    and I --

5        **MS. GOLAN:**  Very briefly, Your Honor, I just want to

6    make sure that we're on the same page as to the other products.

7        The example that we gave in our discovery letter -- it's

8    the second image -- it has a certain product name.  Right now

9    this is marked as "Confidential," and I don't want to disclose

10   anything that is (inaudible) confidential.  But there, that

11   redacts information about a product that I consider to be,

12   you know, similar.

13       And --

14       **THE COURT:**  Right.  Well, I've said that I -- given

15   that you have a pretty limited universe of products that are at

16   issue in the litigation, that similar products, products

17   applied to the skin, that are similar to the products that

18   you've identified -- and we don't quibble over similarity

19   between shower gel and bubble bath and bath foam or whatever --

20   that I think that those are fairly within the universe of --

21   you know, because of the price premium, those are fairly within

22   the universe of what you might expect to be disclosed.

23       I believe Mr. Blackman said he believes they have been

24   disclosed.  But if there things that you would expect to see

25   that you don't see, so -- you know, that is relevant and that

1    is disclosable.  I'll try to write a very quick little order.

2         But otherwise, I think that generally the approach you

3    need to take is:  We would expect to see more and we don't.

4         So you need to say it.

5         And then after you resolve the, you know, similar product

6    issue, you know, Mr. -- you saying, I -- in this redaction,

7    you know, I see this; and if there are products that are like

8    this, I want those.

9         I said that if they're similar, I think you should get

10   those pursuant to a protective order.  Mr. Blackman mostly said

11   we did that.

12        But if he then says:  Hey, they've got nothing to do with

13   this at all -- and I'm going to accept it because that's -- I

14   mean, I guess I could do some extremely modest, you know,

15   confirm; but, you know, I prefer not to -- because, you know, I

16   do, in disputes about redactions, I mean if you really are

17   suspicious, although I suspect you won't be if you actually

18   talked about it, I am willing to, you know, do a sample of

19   documents just to confirm.

20        But, you know, you -- but I won't look at 1,500 documents.

21   I'll look at, you know, a representative few if you really need

22   me to.

23        But I think the lawyers on both sides of the case here are

24   very good, and I do not think -- I think if you have the

25   discussion about what you want and what you don't think that

```
1    you have, I'm confident that you won't need my intervention.

2    But I'm happy to do it if you really need me to.

3           MS. GOLAN:  Okay.  Thank you, Your Honor.

4           THE COURT:  Okay.  All right.  So, yeah, anything,

5    Mr. Francis?  It looks like you're about to say something.

6                       (No response.)

7           THE COURT:  No?  Okay.

8        All right.  So with that, everybody, I don't know.  What

9    else is happening?  When am I going to see you more formally?

10   I don't have the chart in front of me that -- I'm going to look

11   up -- I'm at a bit of a disadvantage.  You know, I have my very

12   tidy little calendaring system.

13          MR. BLACKMAN:  If I could just interject.

14       I think we've got a meet and confer set up for next --

15   we're setting up for next week.  I think the parties need to

16   touch base on that, touch base on the issues we've discussed

17   here today.  We're probably going to need to adjust the case

18   schedule because we don't want to jam plaintiff up on any of

19   this.

20       So what I would think is --

21          THE COURT:  Yeah.  We've got a CMC, I think, that's on

22   calendar --

23          MR. BLACKMAN:  I think --

24          THE COURT:  -- already for June 3rd.

25       Just we do have a -- is that right?  No, that's old.
```

1    Sorry.

2          **MR. BLACKMAN:**  I thought this was our last CMC on

3    calendar until --

4          **THE COURT:**  Let me just double-check.  I'm going to go

5    to June 3rd.  My previous -- I might have adjusted it before --

6    at one point we had one on for June 3rd.  I'm just looking at

7    my calendar.  Just give me a second.

8       No, we no longer have it on calendar.  So we can -- I'm

9    just -- sorry.  It's a little weird for me to be staring at my

10   computer at the same time that we're...

11      We could put a touch -- so I like to have something -- it

12   may be that our next date is actually a CMC/dispositive motion

13   date.  Let me just see.

14      I have a number of revised scheduling orders along the

15   way.  So I don't -- usually, I have a little binder, a case

16   management binder, where I have the latest stuff tabbed, and I

17   always adjust it.

18      So -- yeah, so I don't know, because we had previously

19   talked about the class cert motion being in April.

20          **MS. GOLAN:**  The most recent scheduling order --

21          **THE COURT:**  Oh, there it is.  I see it.  I see it.

22          **MS. GOLAN:**  Okay.

23          **THE COURT:**  So we've still got time.  So this was the

24   CMC.  Okay.  You're right.

25      Well, it sounds like you guys are conferring next week.

1    And maybe what you should do, since you're conferring next

2    week, is to -- you know, if you want to propose a different

3    schedule, do that maybe within a week after your meet and

4    confer.  And -- does that make sense?

5         And then we can adjust things accordingly.  And you can

6    put in an interim -- you know, I like an interim CMC before

7    we -- just because it gives us an opportunity to reconsider

8    things.  Right now your motion isn't due until July, and you

9    haven't discussed what you think your schedule should be.

10        So it's -- I don't know why -- what's your proposal?  Do

11   you want to talk next week and then, if you want to propose

12   something, propose something?

13             MS. GOLAN:  I think that sounds like a good plan,

14   Your Honor.

15             THE COURT:  Okay.  All right.  That sounds fine.  And

16   just, you know I -- you know I like it in that nice, neat

17   little chart form.  So whatever you do, if you could propose it

18   in chart form and then e-mail us a Word copy, that would be

19   great.

20        Okay.  All right.  Thanks, you guys.  I'll try to kick out

21   a very small order.  I might have an -- even tell -- give

22   Elaine a couple sentences to just put on the minute order to

23   kind of track what we talked about today.

24        And obviously, we did this -- we did a recording of this

25   for you guys, just so you would have a record.  Normally, I

1  don't do CMCs on the record; but in pandemic time and given a

2  discovery dispute, we did press record here.  So if you need a

3  recording, you can get a transcription of it.

4          **MS. GOLAN:**  Thank you, Your Honor.

5          **MR. FRANCIS:**  Thank you, Your Honor.

6          **THE COURT:**  Thanks, everybody.

7      Thanks, Elaine.  We can end the calendar.

8              (Proceedings adjourned at 10:17 a.m.)

9                      ---o0o---

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        <u>**CERTIFICATE OF TRANSCRIBER**</u>

2

3        I, ANA DUB, CSR NO. 7445, RDR, CRR, CCRR, CRG, CCG,

4  certify that the foregoing is a true and correct transcript, to

5  the best of my ability, of the above pages of the official

6  electronic sound recording provided to me by the U.S. District

7  Court, Northern District of California, of the proceedings

8  taken on the date and time previously stated in the above

9  matter.

10        I further certify that I am neither counsel for,

11 related to, nor employed by any of the parties to the action in

12 which this hearing was taken; and, further, that I am not

13 financially nor otherwise interested in the outcome of the

14 action.

15 DATE:   Friday, February 12, 2021

16

17

18

19

20 _____

21   Ana Dub, CSR No. 7445, RDR, CRR, CCRR, CRG, CCG

22

23

24

25