**Blaxter | Blackman LLP**

David P. Adams
dadams@blaxterlaw.com
Direct: 415.500.7709

601 Montgomery Street, Ste. 1110
San Francisco, CA 94111

www.blaxterlaw.com

January 5, 2022

Hon. Laurel Beeler
United States Magistrate Judge
United States District Court
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

                Re:    *Kellman v. Whole Foods Market California, Inc., et al*.,
                       Case No. 3:17-cv-6584-LB (N.D. Cal.)

Dear Judge Beeler:

This joint letter is submitted in accordance with the Court's Standing Order regarding expedited procedures for discovery disputes, in connection with plaintiff Shosha Kellman's ("Plaintiff") Supplemental Responses to defendants Whole Foods Private Label, L.P. ("WFM PL"), Whole Foods Market Services, Inc. ("WFM Services"), and Whole Foods Market California, Inc.'s ("WFM California") (collectively, "Defendants") Special Interrogatories, Set One (the "Interrogatories", attached hereto as **Exhibit A**) and Requests for Production, Set One (the "RFPs", attached hereto as **Exhibit B**). The parties have thoroughly met and conferred regarding the issues raised in this letter per Section III.4. of the Court's Standing Order.

    A.      **INTERROGATORIES**

        1.    **Ingredient Testing.**

*Defendant's Position.* Plaintiff's supplemental response to Interrogatory Nos. 17 and 18 refuse to identify ingredient sensitizer testing, and persons with knowledge thereof, used to support the allegations in her FAC. Plaintiff testified at her deposition that this testing is the basis for her allegations that the product labels are false and misleading (*see* Reporter Transcript ("RT") at 140:9-148:13, 265:11-266:21; 277-4-279:17 attached as Exhibit C). The testing must be produced and Plaintiff's responses to Interrogatory Nos. 17 and 18 supplemented to identify the who, what, when, where and how this testing was conducted. (*See Worley v. Avanquest N. Am. Inc.*, No. C 12-04391 WHO (LB), 2013 WL 6576732, at **4–6 (N.D. Cal. Dec. 13, 2013).) It is not sufficient for Plaintiff to provide vague references to testing mentioned or cited in her SAC, opposition papers or other court-filed documents. Plaintiff is obligated to describe and produce these documents, tests, studies, standards and reports. Defendants need these testing documents and information so that it can have the testing, on which Plaintiff relied, evaluated by its own experts. Plaintiff's offer to informally provide a list of the testing at issue is meaningless until and unless she provides a sworn supplemental response listing the relevant testing information with enough detail for Defendants to locate it (e.g., citing by date, publication, title, author, page, hyperlink, and all other information necessary to allow Defendants to locate the precise document). Plaintiff's current sworn response, however, falls short of this standard and must be supplemented.

*Plaintiff's Position.* As Plaintiff's supplemental responses state, she is not personally aware of any person or body who had conducted ingredient sensitizer testing, but is generally aware the

ingredients have been assessed for sensitization potential. Plaintiff's Supplemental Responses to Interrogatory Nos. 17, 18.

At her deposition, Plaintiff did not testify anything to the contrary. She testified that she discussed testing with her attorney, but that she never saw the test results and cannot identify who performed the tests. *See, e.g.*, RT at 142:2-4, 143:7-10, 143:20-22, 145:7-11, 146:7-11, 146:16-147:7, 148:3-13, 278:13-24, 279:3-17, attached as **Exhibit C**.

In their meet-and-confers, Plaintiff's counsel has also reminded Defendants that the proper time for production of testing is at the expert phase — not by demanding Plaintiff to produce tests that she has never seen and for which she lacks the necessary expertise to weigh and evaluate.

Nonetheless, Plaintiff's Supplemental Responses referred Defendants to the "studies, standards, and bodies referred to or mentioned in these court-filed documents, including the European Union's classification of fragrance allergens, assessments by the American Contact Dermatitis Society and the Expert Panel for Cosmetic Ingredient Safety, and the authoritative bodies who have classified these ingredients as a skin sensitizer in accordance to the Globally Harmonized System of Classification and Labelling of Chemicals (GHS)." *Id.* at 12.

Plaintiff's counsel has repeatedly offered to provide Defendants with a list of all tests counsel relied upon. The tests are cited in publicly available governmental chemical databases, and Plaintiff's counsel has repeatedly offered to provide the citation to the governmental record citing these tests. The tests themselves are not in Plaintiff's possession and not within her counsel's possession. Nonetheless, Defendants have refused.

*Defendants' Final Proposed Compromise*

Plaintiff should immediately serve supplemental responses to Interrogatories Nos. 17 and 18.

*Plaintiff's Final Proposed Compromise:*

Plaintiff has fully responded to Interrogatories 17 and 18. If Defendants seek more, Defendants should abide by the Court's schedule for expert disclosures. The federal rules do not require Plaintiff to produce tests she never saw, that neither she nor her counsel possess, and that she lacks the expertise to understand.

    B.    **Requests for Production of Documents**

        1.    **Failure to Produce Identified and Responsive Documents.**

*Defendants' Position.*  Instead of producing copies, or a description by category and location, of documents or other things Plaintiff may use to support her claims (as required by Fed. R. Civ. P. 26(a)(1)(A)(ii)), Plaintiff's initial disclosures merely state "Plaintiff will provide Defendants with documents which are in Plaintiff's possession and likely to bear significantly on her claims in this matter."  *See* Plaintiff's Initial Disclosures attached as **Exhibit D**.  When Defendants requested Plaintiff produce these documents (RFP No. 1), Plaintiff responded with objections and the statement she "will produce non-privileged responsive documents."  Plaintiff has not produced these documents and refuses to withdraw her baseless objections.  Defendants raised these issues in their meet and confer letters (under section headings specific to her initial

disclosures or RFP No. 1 response) dated April 14, 2020, October 19, 2021 and November 18, 2021 and during the parties' meet and confer conferences.  Plaintiff refuses to withdraw her objections and has not produced the documents identified in response to RFP No. 1 nor RFP Nos. 5, 10 and 22 (receipts).  Plaintiff has had over a year to produce these documents and must promptly do so. (*See* Rule 33(b)(2)(B).)

*Plaintiff's Position.*  On December 14, 2021, Defendants first raised their concern about "documents identified" in her initial disclosures. Plaintiff asked, but Defendants failed to identify, which documents they refer to. To this day, Plaintiff still does not know what documents Defendants demand. Plaintiff has produced receipts she located of the Whole Foods products pertinent to this lawsuit. She has produced images of all similar products she purchased still in her possession. She has also produced receipts for other brands' products that she has purchased, such as Devita, Oribe, Andalou, Shikai, etc. The products involved are everyday consumer purchases like shampoo, laundry detergent, lotion, and wash, making this an ongoing request with marginal relevance. Plaintiff will continue to identify new products she purchases in the future. Defendants' demand for more receipts of every shampoo, etc. does nothing to move this litigation forward, and is more harassing than probative.

   2.  **Ingredient Testing.**

*Defendants' Position.*  RFP Nos. 29, 30 and 31 demand Plaintiff produce all documents supporting her contention that: (i) the products at issue are not hypoallergenic; (ii) the products contain known skin sensitizers, and (iii) that the ingredients in the products are skin sensitizers. Plaintiff testified at deposition that she believes the products are not hypoallergenic and contain sensitizing or harmful chemicals based on third-party ingredient testing done by experts and scientists in the field.  (*See* RT at 140:9-148:13, 265:11-266:21; 277-4-279:17.)  Because the testing is directly responsive to all three requests and the basis for Plaintiff's belief that the product labels are false and misleading, the ingredient testing and testing results must be produced. (*See Worley*, WL 6576732, at *4–6.)  Further, Plaintiff cannot simply identify testing by name on the grounds that it is "equally available to both parties" – Defendants should not have to guess at the identity of responsive documents which are foundational to Plaintiff's case. Plaintiff also cannot claim that such documents are the proper subject of expert discovery, as any protection afforded under Fed. R. Civ. P. 26(b)(4)(B) is waived through Plaintiff's reliance on this testing to substantiate the allegations in her complaints (*See e.g.* ECF No. 93, Fourth Amended Complaint, at ¶¶ 106, 107, 109, 113, 116, 118, 121, 122, 124-126, 132, 134) and as used to defend against Defendants' past motions to dismiss (ECF No. 38-1, at p.23). (*See Worley*, 2013 WL 6576732, at **4–6.)  Finally, Plaintiff cannot evade her duty to produce responsive documents on the grounds that they are in possession of her counsel.  (*Hickman v. Taylor* (1947) 329U.S. 495, 504 [a party cannot refuse discovery "on the ground that the information sought is solely within the knowledge of his attorney."].)

*Plaintiff's Position.*  Plaintiff's position is stated in Section A.1 above. Plaintiff's counsel has repeatedly offered to provide Defendants with a list of all tests her counsel relied upon. The tests themselves are not in Plaintiff's possession and not within her counsel's possession. Nonetheless, Defendants have refused.

Again, contrary to Defendants' insistence, Plaintiff discussed testing with her attorney, but she never saw the test results and cannot identify who performed the tests. *See, e.g.*, Exhibit C, RT at 142:2-4 ([Q] "So what testing are you referring to?" [A]: "I'm referring to testing that has been done that my lawyer and I have spoken about."); RT at 143:7-10 ([Q] "Can you tell me who performed that testing? Is that a no?" [A] "That's a no."); RT at 143:21-22 ("Did I look at the test results? No. I relied on what science was given to me or what I've been told."); RT at 145:7-11 ([Q] "You can't tell me what lab the scientists worked for, can you?" [A] "No." [Q] "You can't tell me who the scientists were?" [A] "No."); RT at 146:7-11 ([Q] "I'm just trying to understand, what is the — your basis for your belief that 365 gentle skin cleanser is not hypoallergenic." [A] "I know it's not hypoallergenic.·My lawyers and I have spoken about it..."); RT at 147:4-7 ("I feel like what I believe is based on conversation.·I have looked at labels. Like, that's — that's all the factual information I can give you at this moment.").

   3.  **Records Searches.**

*Defendants' Position.*  Plaintiff's supplemental responses to RFP Nos. 5, 6, 8, 9, 10, and 22 all claim that Plaintiff "conducted a diligent search … of her financial records" for responsive documents.  Plaintiff, however, testified at deposition that she did not search her financial records and did not review her credit or debit card statements for responsive information.  (*See* RT at 256:10-259:8.)  These records may contain responsive and relevant information as to when, where and what personal care products Plaintiff purchased in the past and used today. Plaintiff must review her financial records, supplement her responses and produce all responsive documents and information.

*Plaintiff's Position.*  Defendants demand access to Plaintiff's financial records — her bank statements, credit card statements, etc. — despite the fact that neither her bank statements nor her credit card statements will disclose whether she purchased a product labeled as hypoallergenic product. To take a purely hypothetical example, her credit card or bank statement would disclose if she spent, say, $59.43 at a Walgreen's pharmacy in December of 2019, but it will not disclose *what* she purchased nor the price she paid.

Defendants grossly misquote Plaintiff's response, suggesting that she promised to scrutinize her bank statements. In fact, Plaintiff stated: "Plaintiff has conducted a diligent search in her home and of her financial records for documents relating to her use of hypoallergenic products, and will produce photographs of those products in her home and receipts she has been able to locate." Supp. Resp. RFP 5. She did so.

Plaintiff has — and continues to — search her financial records for documents related to her purchase of the products at issue. For example, Plaintiff has conducted a diligent search of her records for "financial records for documents relating to her purchase of Defendants' products listed in her Fourth Amended Complaint from any online retail marketplace between January 2014 to the present. Plaintiff has not located any responsive documents." Supp. Resp. RFP 9. She has produced receipts of her Amazon purchases of Defendants' products. To the extent Defendants want more, Plaintiff has no response except that she has no other records, and that records of her purchases are already in Defendants' possession.  Providing Defendants with her bank and credit card statements will not shed any more light.

**4. Product Labeling.**

*Defendants' Position.* Defendants' RFP Nos. 13-17 seek the documents reflecting each of the labels, label statements and website statement or excerpts that Plaintiff contends are false or misleading. Plaintiff's supplemental responses to RFP Nos. 12, 13, 14, 15 and 17 "refer Defendants to the labeling of its products" and "to the product labels it produced in discovery." Similarly, Plaintiff's supplemental responses to RFP Nos. 16, 17 and 18 "refer Defendants to the labeling of its products as shown on its website." These responses are vague because they do not identify which labels or web statements, or portions thereof, are responsive. A mere list of the products which Plaintiff claims are mislabeled is likewise not sufficient because most products contain multiple different statements and labels may have changed overtime – putting some labels outside the statute of limitations and others outside of the scope of Plaintiff's deception allegations. Plaintiff refuses to limit her claims to the products and labels identified in paragraphs 101 and 102, and Exhibit 1 of her Fourth Amended Complaint. Plaintiff has not otherwise provided Defendants with a list of challenged products or statements. As such, Plaintiff is obligated to identify specifically what other products and label or website statements she is challenging and produce copies of those statements.

*Plaintiff's Position.* Plaintiff provided Defendants with a list of products within the class. For each product, she provided the labels in her possession, *see* Fourth Am. Compl. Ex. 1 (ECF 91-1). She repeatedly offered to provide a list of any new products that Whole Foods introduced since she filed her Complaint. She repeatedly offered to list the Bates-stamped labels they produced for all these products.

Yet none of this satisfies Defendants.

An interrogatory asking Plaintiff to identify the products and the Bates-stamped labels is the proper method of discovery. Plaintiff is under no obligation to produce documents that are within Defendants' possession. Even more so here: Plaintiff does not know whether Defendants' production of product labels is complete. Indeed, until a few months ago, Defendants insisted on redacting product labels entirely. *See* ECF 182-13. Even now, Defendants are still producing documents. A request for the production of documents already within Defendants' possession is a bully's attempt to profit from withholding discoverable data from Plaintiff for *years.*

***Defendants' Final Proposed Compromise***

Plaintiff should immediately serve further supplemental responses, conduct a diligent search of her financial records, and produce all responsive non-privileged documents.

***Plaintiff's Final Proposed Compromise***

Plaintiff already identified the products in the class and the labels she has in her possession. Defendants have refused to produce product labels for years, redacting images from production and forcing Plaintiff to file two letter motions to compel. To this day, Plaintiff still does not know whether she has current images of the relevant product labels.

Plaintiff again invites Defendants to serve an interrogatory asking her to identify any Bates-stamped labels she contends should be included in the class. Plaintiff will identify what she can, but she respectfully declines to *produce* documents Defendants already have in their possession.

Respectfully submitted,

<u>/s/David P. Adams</u>
Brian R. Blackman
J.T. Wells Blaxter
David P. Adams
BLAXTER BLACKMAN LLP
*Attorneys for Defendants*

<u>/s/ Yvette Golan</u>
Yvette Golan
THE GOLAN FIRM
*Attorney for Plaintiff*

cc:     All counsel of record via ECF

**Blaxter | Blackman LLP**

## ATTESTATION

      I, David P. Adams, am the ECF User whose identification and password are being used to file this Joint Letter. In compliance with Civil L.R. 5-1(i)(3), I attest that Yvette Y. Golan has concurred in this filing.

                                               */s/ David P. Adams*
                                               DAVID P. ADAMS